# IBANEZ *v.* FLORIDA DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, BOARD OF ACCOUNTANCY

No. 93–639.   Argued April 19, 1994—Decided June 13, 1994

GINSBURG, J., delivered the opinion for a unanimous Court with respect to Part II–B, and the opinion of the Court with respect to Parts I, II–A, and II–C, in which BLACKMUN, STEVENS, SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined. O'CONNOR, J., filed an opinion concurring in part and dissenting in part, in which REHNQUIST, C. J., joined, *post*, p. 149.

*Silvia Safille Ibanez, pro se,* argued the cause for petitioner. With her on the briefs were *J. Lofton Westmoreland* and *Robert J. Shapiro.*

*Lisa S. Nelson* argued the cause and filed a brief for respondent.*

*Briefs of *amici curiae* urging reversal were filed for the Alliance of Practicing Certified Public Accountants et al. by *Donald B. Verrilli, Jr., David W. DeBruin,* and *Maureen F. Del Duca;* for the American Association of Attorney-Certified Public Accountants, Inc., by *David Ostrove,*

JUSTICE GINSBURG delivered the opinion of the Court.

Petitioner Silvia Safille Ibanez, a member of the Florida Bar since 1983, practices law in Winter Haven, Florida. She is also a Certified Public Accountant (CPA), licensed by respondent Florida Board of Accountancy (Board)[1] to "practice public accounting." In addition, she is authorized by the Certified Financial Planner Board of Standards, a private organization, to use the trademarked designation "Certified Financial Planner" (CFP).

Ibanez referred to these credentials in her advertising and other communication with the public. She placed CPA and CFP next to her name in her yellow pages listing (under "Attorneys") and on her business card. She also used those designations at the left side of her "Law Offices" stationery. Notwithstanding the apparently truthful nature of her communication—it is undisputed that neither her CPA license nor her CFP certification has been revoked—the Board reprimanded her for engaging in "false, deceptive, and misleading" advertising. Final Order of the Board of Accountancy (May 12, 1992) (hereinafter Final Order), App. 178, 194.

The record reveals that the Board has not shouldered the burden it must carry in matters of this order. It has not

*Sydney S. Traum,* and *Philip D. Brent;* for the Certified Financial Planner Board of Standards et al. by *Peter E. Zwanzig;* and for the Florida Bar by *Steven E. Stark* and *Scott D. Makar.*

Briefs of *amici curiae* urging affirmance were filed for the American Institute of Certified Public Accountants by *Louis A. Craco, Richard I. Miller, Michael R. Young,* and *Kelly M. Hnatt;* and for the Florida Institute of Certified Public Accountants by *Kenneth R. Hart* and *Steven P. Seymoe.*

[1] The Board of Accountancy, created by the Florida Legislature, Fla. Stat. § 473.303 (1991), is authorized to "adopt all rules necessary to administer" the Public Accountancy Act (chapter 473 of the Florida Statutes). Fla. Stat. § 473.304 (Supp. 1992). The Board is responsible for licensing CPA's, see Fla. Stat. § 473.308 (1991), and every licensee is subject to the governance of the Act and the rules adopted by the Board. Fla. Stat. § 473.304 (Supp. 1992).

demonstrated with sufficient specificity that any member of the public could have been misled by Ibanez' constitutionally protected speech or that any harm could have resulted from allowing that speech to reach the public's eyes. We therefore hold that the Board's decision censuring Ibanez is incompatible with First Amendment restraints on official action.

## I

Under Florida's Public Accountancy Act, only licensed CPA's may "[a]ttest as an expert in accountancy to the reliability or fairness of presentation of financial information," Fla. Stat. § 473.322(1)(c) (1991),[2] or use the title "CPA" or other title "tending to indicate that such person holds an active license" under Florida law. § 473.322(1)(b). Furthermore, only licensed CPA's may "[p]ractice public accounting." § 473.322(1)(a). "Practicing public accounting" is defined as an "offe[r] to perform . . . one or more types of services involving the use of accounting skills, or . . . management advisory or consulting services," Fla. Stat. § 473.302(5) (Supp. 1992), made by one who either *is*, § 473.302(5)(a), or "*hold[s] himself . . . out as*," § 473.302(5)(b) (emphasis added), a certified public accountant.[3]

The Board learned of Ibanez' use of the designations CPA and CFP when a copy of Ibanez' yellow pages listing was mailed, anonymously, to the Board's offices; it thereupon commenced an investigation and, subsequently, issued a complaint against her. The Board charged Ibanez with (1)

[2] This "attest" function is more commonly referred to as "auditing."

[3] Florida's Public Accountancy Act is known as a "Title Act" because, with the exception of the "attest" function, activities performed by CPA's can lawfully be performed by non-CPA's. See Brief for Respondent 11–12. The Act contains additional restrictions on the conduct of licensed CPA's. For example, a partnership or corporation cannot "practice public accounting" unless all partners or shareholders are CPA's, Fla. Stat. § 473.309 (1991), nor may licensees "engaged in the practice of public accounting" pay or accept referral fees, § 473.3205, or accept contingency fees, § 473.319.

"practicing public accounting" in an unlicensed firm, in violation of § 473.3101 of the Public Accountancy Act;[4] (2) using a "specialty designation"—CFP—that had not been approved by the Board, in violation of Board Rule 24.001(1)(g), Fla. Admin. Code § 61H1–24.001(1)(g) (1994);[5] and (3) appending the CPA designation after her name, thereby "impl[ying] that she abides by the provisions of [the Public Accountancy Act]," in violation of Rule 24.001(1)'s ban on "fraudulent, false, deceptive, or misleading" advertising. Amended Administrative Complaint (filed June 30, 1991), 1 Record 32–35.

At the ensuing disciplinary hearing, Ibanez argued that she was practicing law, not "public accounting," and was therefore not subject to the Board's regulatory jurisdiction. Response to Amended Administrative Complaint (filed Aug. 26, 1991), ¶ 25, id., at 108.[6] Her use of the CPA and CFP designations, she argued further, constituted "nonmisleading, truthful, commercial speech" for which she could not be sanctioned. ¶ 24, ibid. Prior to the close of proceedings before the hearing officer, the Board dropped the charge that Ibanez was practicing public accounting in an unlicensed firm. Order on Reconsideration (filed Aug. 22, 1991), ¶ 2, id., at 103–104. The hearing officer subsequently found in Ibanez' favor on all counts, and recommended to the Board that,

---

[4] Florida Stat. § 473.3101 (Supp. 1994) requires that "[e]ach partnership, corporation, or limited liability company seeking to engage in the practice of public accounting" apply for a license from the Board, and § 473.309 requires that each such partnership or corporation hold a current license.

[5] Rule 24.001(1) states, in pertinent part, that "[n]o licensee shall disseminate . . . any . . . advertising which is in any way fraudulent, false, deceptive, or misleading, if it . . . (g) [s]tates or implies that the licensee has received formal recognition as a specialist in any aspect of the practice of public accountancy unless . . . [the] recognizing agency is approved by the Board." Fla. Admin. Code § 61H1–24.001(1) (1994). The CFP Board of Standards, the "recognizing agency" in regard to Ibanez' CFP designation, has not been approved by the Board.

[6] Ibanez pointed out that she does not perform the "attest" function in her law practice, and that no service she performs requires a CPA license. See supra, at 139, n. 3.

for want of the requisite proof, all charges against Ibanez be dismissed. Recommended Order (filed Jan. 15, 1992), App. 147.

The Board rejected the hearing officer's recommendation, and declared Ibanez guilty of "false, deceptive and misleading" advertising. Final Order, *id.*, at 194. The Board reasoned, first, that Ibanez was "practicing public accounting" by virtue of her use of the CPA designation and was thus subject to the Board's disciplinary jurisdiction. *Id.*, at 183. Because Ibanez had insisted that her law practice was outside the Board's regulatory jurisdiction, she had, in the Board's judgment, rendered her use of the CPA designation misleading:

> "[Ibanez] advertises the fact that she is a CPA, while performing the same 'accounting' activities she performed when she worked for licensed CPA firms, but she does not concede that she is engaged in the practice of public accounting so as to bring herself within the jurisdiction of the Board of Accountancy for any negligence or errors [of which] she may be guilty when delivering her services to her clients.
>
> "[Ibanez] is unwilling to acquiesce in the requirements of [the Public Accountancy Act] and [the Board's rules] by complying with those requirements. She does not license her firm as a CPA firm; forego certain forms of remuneration denied to individuals who are practicing public accountancy; or limit the ownership of her firm to other CPAs. . . . [She] has, in effect, told the public that she is subject to the provisions of [the Public Accountancy Act] and the jurisdiction of the Board of Accountancy when she believes and acts as though she is not." *Id.*, at 184–185.

Next, the Board addressed Ibanez' use of the CFP designation. On that matter, the Board stated that any designation using the term "certified" to refer to a certifying orga-

nization other than the Board itself (or an organization approved by the Board) "inherently mislead[s] the public into believing that state approval and recognition exists." *Id.,* at 193–194. Ibanez appealed to the District Court of Appeal, First District, which affirmed the Board's final order *per curiam* without opinion. *Id.,* at 196, judgt. order reported at 621 So. 2d 435 (1993). As a result, Ibanez had no right of review in the Florida Supreme Court. We granted certiorari, 510 U. S. 1067 (1994), and now reverse.

## II

### A

The Board correctly acknowledged that Ibanez' use of the CPA and CFP designations was "commercial speech." Final Order, App. 186. Because "disclosure of truthful, relevant information is more likely to make a positive contribution to decisionmaking than is concealment of such information," *Peel* v. *Attorney Registration and Disciplinary Comm'n of Ill.,* 496 U. S. 91, 108 (1990), only false, deceptive, or misleading commercial speech may be banned. *Zauderer* v. *Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U. S. 626, 638 (1985), citing *Friedman* v. *Rogers,* 440 U. S. 1 (1979); see also *In re R. M. J.,* 455 U. S. 191, 203 (1982) ("Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. . . . Misleading advertising may be prohibited entirely.").

Commercial speech that is not false, deceptive, or misleading can be restricted, but only if the State shows that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest.[7] *Central Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n of N. Y.,* 447 U. S. 557, 566 (1980);

---

[7] "It is well established that '[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'" *Edenfield* v. *Fane,* 507 U. S. 761, 770 (1993), quoting *Bolger* v. *Youngs Drug Products Corp.,* 463 U. S. 60, 71, n. 20 (1983).

see also *id.*, at 564 (regulation will not be sustained if it "provides only ineffective or remote support for the government's purpose"); *Edenfield* v. *Fane,* 507 U. S. 761, 767 (1993) (regulation must advance substantial state interest in a "direct and material way" and be in "reasonable proportion to the interests served"); *In re R. M. J.,* 455 U. S., at 203 (State can regulate commercial speech if it shows that it has "a substantial interest" and that the interference with speech is "in proportion to the interest served").

The State's burden is not slight; the "free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing the truthful from the false, the helpful from the misleading, and the harmless from the harmful." *Zauderer,* 471 U. S., at 646. "[M]ere speculation or conjecture" will not suffice; rather the State "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield,* 507 U. S., at 770, 771; see also *Zauderer,* 471 U. S., at 648–649 (State's "unsupported assertions" insufficient to justify prohibition on attorney advertising; "broad prophylactic rules may not be so lightly justified if the protections afforded commercial speech are to retain their force"). Measured against these standards, the order reprimanding Ibanez cannot stand.

### B

We turn first to Ibanez' use of the CPA designation in her commercial communications. On that matter, the Board's position is entirely insubstantial. To reiterate, Ibanez holds a currently active CPA license which the Board has never sought to revoke. The Board asserts that her truthful communication is nonetheless misleading because it "[tells] the public that she is subject to the provisions of [the Accountancy Act] and the jurisdiction of the Board of Accountancy when she believes and acts as though she is not." Final Order, App. 185; see also Brief for Respondent 20 ("[T]he use

of the CPA designation . . . where the licensee is unwilling to comply with the provisions of the [statute] under which the license was granted, is inherently misleading and may be prohibited.").

Ibanez no longer contests the Board's assertion of jurisdiction, see Brief for Petitioner 28 (Ibanez "is, in fact, a licensee subject to the rules of the Board"), and in any event, what she "believes" regarding the reach of the Board's authority is not sanctionable. See *Baird* v. *State Bar of Ariz.*, 401 U. S. 1, 6 (1971) (First Amendment "prohibits a State from excluding a person from a profession or punishing him solely because . . . he holds certain beliefs"). Nor can the Board rest on a bare assertion that Ibanez is "unwilling to comply" with its regulation. To survive constitutional review, the Board must build its case on specific evidence of noncompliance. Ibanez has neither been charged with, nor found guilty of, any professional activity or practice out of compliance with the governing statutory or regulatory standards.[8] And as long as Ibanez holds an active CPA license from the Board we cannot imagine how consumers can be misled by her truthful representation to that effect.

## C

The Board's justifications for disciplining Ibanez for using the CFP designation are scarcely more persuasive. The Board concluded that the words used in the designation—particularly, the word "certified"—so closely resemble "the terms protected by state licensure itself, that their use, when not approved by the Board, inherently mislead[s] the public into believing that state approval and recognition exists." Final Order, App. 193–194. This conclusion is difficult to maintain in light of *Peel.* We held in *Peel* that an attorney's use of the designation "Certified Civil Trial Specialist By the

---

[8] Notably, the Board itself withdrew the only charge against Ibanez of this kind, viz., the allegation that she practiced public accounting in an unlicensed firm. See *supra*, at 140.

National Board of Trial Advocacy" was neither actually nor inherently misleading. See 496 U. S., at 106 (rejecting contention that use of National Board of Trial Advocacy certification on attorney's letterhead was "actually misleading"); *id.*, at 110 ("State may not . . . completely ban statements that are not actually or inherently misleading, such as certification as a specialist by bona fide organizations such as NBTA"); *id.*, at 111 (Marshall, J., joined by Brennan, J., concurring in judgment) (agreeing that attorney's letterhead was "neither actually nor inherently misleading"). The Board offers nothing to support a different conclusion with respect to the CFP designation.[9] Given "the complete absence of any evidence of deception," *id.*, at 106, the Board's "concern about the possibility of deception in hypothetical cases is not sufficient to rebut the constitutional presumption favoring disclosure over concealment," *id.*, at 111.[10]

---

[9] JUSTICE O'CONNOR writes that "[t]he average consumer has no way to verify the accuracy or value of [Ibanez'] use of the CFP designation" because her advertising, "[u]nlike the advertisement in *Peel*, . . . did not identify the organization that had conferred the certification." *Post*, at 150. We do not agree that the consumer of financial planning services is thus disarmed.

To verify Ibanez' CFP credential, a consumer could call the CFP Board of Standards. The Board that reprimanded Ibanez never suggested that such a call would be significantly more difficult to make than one to the certifying organization in *Peel*, the National Board of Trial Advocacy. We note in this regard that the attorney's letterhead in *Peel* supplied no address or telephone number for the certifying agency. Most instructive on this matter, we think, is the requirement of the Rules of Professional Conduct of the Florida Bar, to which attorney Ibanez is subject, that she provide "written information setting forth the factual details of [her] experience, expertise, background, and training" to anyone who so inquires. See Florida Bar, Rule of Professional Conduct 4–7.3(a)(2).

[10] The Board called only three witnesses at the proceeding against Ibanez, all of whom were employees or former employees of the Department of Professional Regulation. Neither the witnesses, nor the Board in its submissions to this Court, offered evidence that any member of the public has been misled by the use of the CFP designation. See *Peel*, 496 U. S., at 100–101 (noting that there was "no contention that any potential client

The Board alternatively contends that Ibanez' use of the CFP designation is "potentially misleading," entitling the Board to "enact measures short of a total ban to prevent deception or confusion." Brief for Respondent 33, citing *Peel,* 496 U. S., at 116 (Marshall, J., joined by Brennan, J., concurring in judgment). If the "protections afforded commercial speech are to retain their force," *Zauderer,* 471 U. S., at 648–649, we cannot allow rote invocation of the words "potentially misleading" to supplant the Board's burden to "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield,* 507 U. S., at 771.

The Board points to Rule 24.001(1)(j), Fla. Admin. Code § 61H1–24.001(1)(j) (1994), which prohibits use of any "specialist" designation unless accompanied by a disclaimer, made "in the immediate proximity of the statement that implies formal recognition as a specialist"; the disclaimer must "stat[e] that the recognizing agency is not affiliated with or sanctioned by the state or federal government," and it must set out the recognizing agency's "requirements for recognition, including, but not limited to, educatio[n], experience[,] and testing." See Brief for Respondent 33–35. Given the state of this record—the failure of the Board to point to any harm that is potentially real, not purely hypothetical—we are satisfied that the Board's action is unjustified. We express no opinion whether, in other situations or on a different record, the Board's insistence on a disclaimer might serve as an appropriately tailored check against deception or confusion, rather than one imposing "unduly burdensome disclosure requirements [that] offend the First Amendment." *Zauderer,* 471 U. S., at 651. This much is plain, however: The detail required in the disclaimer currently described by the Board effectively rules out notation of the "specialist"

---

or person was actually misled or deceived," nor "any factual finding of actual deception or misunderstanding").

designation on a business card or letterhead, or in a yellow pages listing.[11]

The concurring Justices, on whom the Board relies, did indeed find the "[NBTA] Certified Civil Trial Specialist" statement on a lawyer's letterhead "potentially misleading," but they stated no categorical rule applicable to all specialty designations. Thus, they recognized that "[t]he potential for misunderstanding might be less if the NBTA were a commonly recognized organization and the public had a general understanding of its requirements." *Peel*, 496 U. S., at 115. In this regard, we stress again the failure of the Board to back up its alleged concern that the designation CFP would mislead rather than inform.

The Board never adverted to the prospect that the public potentially in need of a civil trial specialist, see *Peel, supra*, is wider, and perhaps less sophisticated, than the public with financial resources warranting the services of a planner. Noteworthy in this connection, "Certified Financial Planner" and "CFP" are well-established, protected federal trademarks that have been described as "the most recognized designation[s] in the planning field." Financial Planners: Report of Staff of United States Securities and Exchange Commission to the House Committee on Energy and Commerce's Subcommittee on Telecommunications and Finance 53 (1988), reprinted in Financial Planners and Investment Advisors, Hearing before the Subcommittee on Consumer Affairs of the Senate Committee on Banking, Housing and Urban Affairs, 100th Cong., 2d Sess., 78 (1988). Approxi-

---

[11] Under the Board's regulations, moreover, it appears that even a disclaimer of the kind described would not have saved Ibanez from censure. Rule 24.001(i) flatly bans "[s]tat[ing] a form of recognition by any entity other than the Board that uses the ter[m] 'certified.'" Separate and distinct from that absolute prohibition, the regulations further proscribe "[s]tat[ing] or impl[ying] that the licensee has received formal recognition as a specialist in any aspect of the practice of public accounting, unless the statement contains" a copiously detailed disclaimer. Rule 24.001(j).

mately 27,000 persons have qualified for the designation nationwide. Brief for Certified Financial Planner Board of Standards, Inc., et al. as *Amici Curiae* 3. Over 50 accredited universities and colleges have established courses of study in financial planning approved by the CFP Board of Standards, and standards for licensure include satisfaction of certain core educational requirements, a passing score on a certification examination "similar in concept to the Bar or CPA examinations," completion of a planning-related work experience requirement, agreement to abide by the CFP Code of Ethics and Professional Responsibility, and an annual continuing education requirement. *Id.*, at 10–15.

Ibanez, it bears emphasis, is engaged in the practice of law and so represents her offices to the public. Indeed, she performs work reserved for lawyers but nothing that *only* CPA's may do. See *supra*, at 139, n. 3. It is therefore significant that her use of the designation CFP is considered in all respects appropriate by the Florida Bar. See Brief for Florida Bar as *Amicus Curiae* 9–10 (noting that Florida Bar, Rules of Professional Conduct, and particularly Rule 4–7.3, "specifically allo[w] Ibanez to disclose her CPA and CFP credentials [and] contemplate that Ibanez must provide this information to prospective clients (if relevant)").

Beyond question, this case does not fall within the caveat noted in *Peel* covering certifications issued by organizations that "had made no inquiry into petitioner's fitness," or had "issued certificates indiscriminately for a price"; statements made in such certifications, "even if true, could be misleading." 496 U. S., at 102. We have never sustained restrictions on constitutionally protected speech based on a record so bare as the one on which the Board relies here. See *Edenfield*, 507 U. S., at 771 (striking down Florida ban on CPA solicitation where Board "presents no studies that suggest personal solicitation . . . creates the dangers . . . the Board claims to fear" nor even "anecdotal evidence . . . that validates the Board's suppositions"); *Zauderer*, 471 U. S., at

648–649 (striking down restrictions on attorney advertising where "State's arguments amount to little more than unsupported assertions" without "evidence or authority of any kind"). To approve the Board's reprimand of Ibanez would be to risk toleration of commercial speech restraints "in the service of . . . objectives that could not themselves justify a burden on commercial expression." *Edenfield*, 507 U. S., at 171.

Accordingly, the judgment of the Florida District Court of Appeal is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR, with whom THE CHIEF JUSTICE joins, concurring in part and dissenting in part.

Once again, we are confronted with a First Amendment challenge to a state restriction on professional advertising. Petitioner, who has been licensed as an attorney and as a certified public accountant (CPA) by the State of Florida, and who also has been recognized as a "Certified Financial Planner" (CFP) by a private organization, identified herself in telephone listings under the "attorneys" heading as "IBANEZ SILVIA S CPA CFP." App. 4. Respondent, the Florida Board of Accountancy, determined that petitioner's use of both the CPA and the CFP designations was inherently misleading, and sanctioned her for false advertising. Fla. Stat. § 473.323(1)(f) (1991) (accountants subject to disciplinary action if they "[a]dvertis[e] goods or services in a manner which is fraudulent, false, deceptive, or misleading in form or content").

I

Because petitioner's use of the CFP designation is both inherently and potentially misleading, I would uphold the Board's sanction of petitioner. I therefore respectfully dissent from Parts II–A and II–C of the opinion of the Court.

## A

States may prohibit inherently misleading speech entirely. *In re R. M. J.*, 455 U. S. 191, 203 (1982). In *Peel* v. *Attorney Registration and Disciplinary Comm'n of Ill.*, 496 U. S. 91 (1990), we considered an attorney advertisement that proclaimed the lawyer to be a "'Certified Civil Trial Specialist By the National Board of Trial Advocacy.'" See *id.*, at 96. A majority of the Court concluded that this statement was not inherently misleading, although the discussion of this issue was joined by only four Justices. See *id.*, at 100–106 (plurality opinion); *id.*, at 111 (Marshall, J., concurring in judgment). The plurality reasoned that the certification was a statement of verifiable fact; that the certification had been conferred by a reputable organization that had applied objectively clear standards to determining the attorney's qualifications; and that consumers would not confuse the attorney's claim of certification as a specialist with formal state recognition.

Although the Certified Financial Planner Board of Standards, Inc., appears to be a reputable organization that applies objectively clear standards before conferring the CFP designation on accountants, the other factors relied on by the *Peel* plurality are not present in this case. First, it was important in *Peel* that "[t]he facts stated on [the attorney's] letterhead are true *and verifiable*." *Id.*, at 100 (emphasis added); see also *id.*, at 101 ("A lawyer's certification by [the recognizing organization] is a verifiable fact, as are the predicate requirements for that certification"). Of course, petitioner's recognition as a CFP can be verified—but only if the consumer knows where to call or write. Unlike the advertisement in *Peel*, petitioner's advertisements did not identify the organization that had conferred the certification. The average consumer has no way to verify the accuracy or value of petitioner's use of the CFP designation.

Related to this point is the fact that, in the absence of an identified conferring organization, the consumer is likely to

conclude that the CFP designation is conferred by the State. The *Peel* plurality stressed that "it seems unlikely that [the attorney's] statement about his certification as a 'specialist' *by an identified national organization* necessarily would be confused with formal state recognition." *Id.*, at 104–105 (emphasis added). Because here there is no such identification, the converse is true. It is common knowledge that "many States prescribe requirements for, and 'certify' public accountants as, 'Certified Public Accountants.'" *Id.*, at 113 (Marshall, J., concurring in judgment). Petitioner has of course been licensed as a CPA by the State of Florida. But her use of the CFP designation in close connection with the identification of herself as a CPA ("IBANEZ SILVIA S CPA CFP") would lead a reasonable consumer to conclude that the two "certifications" were conferred by the same entity—the State of Florida.

The Board of Accountancy has recognized this likelihood of consumer confusion: "[The term 'certified'] in conjunction with the term 'CPA' and the practice of public accounting, [is] so close to the terms protected by state licensure itself, that [its] use, when not approved by the Board, inherently mislead[s] the public into believing that state approval and recognition exists." App. 193–194. For this reason, the Board's regulations provide that an advertisement will be deemed misleading if it "[s]tates a form of recognition by any entity other than the Board that uses the ter[m] 'certified.'" Fla. Admin. Code 61H1–24.001(1)(i) (1994). Petitioner's advertising is in clear violation of this prohibition. Because the First Amendment does not prevent a State from protecting consumers from such inherently misleading advertising, in my view the Board's blanket prohibition on the use of the term "certified" in CPA advertising is constitutional as applied to petitioner.

### B

But even if petitioner's use of "certified" was not inherently misleading, it seems clear beyond cavil that *some* con-

sumers would conclude that the State conferred the CFP designation, just as it does the CPA license, and thus that the advertisement is *potentially* misleading. Indeed, this conclusion follows *a fortiori* from *Peel*, where five Justices concluded that the attorney's specialty designation was at least potentially misleading. See 496 U. S., at 118 (White, J., dissenting). The advertisement in *Peel*, which identified the certifying organization, provided substantially more information to consumers than does petitioner's advertisement; if the one was potentially misleading (and we said that it was), so too is the other.

States may not completely ban potentially misleading commercial speech if narrower limitations can ensure that the information is presented in a nonmisleading manner. *In re R. M. J., supra*, at 203. But if a professional's certification claim has the potential to mislead, the State may "requir[e] a disclaimer about the certifying organization or the standards of a specialty." *Peel*, 496 U. S., at 110 (plurality opinion); see also *id.*, at 116–117 (Marshall, J., concurring in judgment); *In re R. M. J., supra*, at 203. The Board has done just that: An advertisement that "[s]tates or implies that the licensee has received formal recognition as a specialist in any aspect of the practice of public accounting" will be deemed false or misleading, "unless the statement contains a disclaimer stating that the recognizing agency is not affiliated with or sanctioned by the state or federal government." Fla. Admin. Code 61H1–24.001(1)(j) (1994). "The advertisement must also contain the agency's requirements for recognition, including, but not limited to, educatio[n], experience and testing. These statements must be in the immediate proximity of the statement that implies formal recognition as a specialist." *Ibid.* There is no question but that the CFP designation "implies that [petitioner] has received formal recognition as a specialist" in financial planning, an "aspect of the practice of public accounting," and her advertisements do not contain the required disclaimer. If the ab-

solute prohibition on the use of the term "certified" cannot be applied to petitioner (as the Court today holds), then the disclaimer requirement applies to petitioner's advertising that she is a specialist in financial planning. Because petitioner failed to comply with it, the Board properly disciplined her.

## II

Petitioner *is* a certified public accountant, and her use of the CPA designation in advertising conveyed this truthful information to the public. I agree with the Court that the State of Florida may not prohibit petitioner's use of the CPA designation under the circumstances in which this case is presented to us, and I therefore join Part II–B of the Court's opinion. I would only point out that it is open to the Board to proceed against petitioner for practicing public accounting in violation of statutory or regulatory standards applicable to Florida accountants. See Brief for Petitioner 28 ("Petitioner is, in fact, a licensee subject to the rules of the Board of Accountancy"). And if petitioner's public accounting license is revoked, the State may constitutionally prohibit her from advertising herself as a CPA.