**ALLSTATE INSURANCE COMPANY, Plaintiff,**

v.

**STATE OF SOUTH DAKOTA; Jeff Stingley in his official capacity as Secretary of Commerce; and Darla Lyon in her official capacity as Director of the Division of Insurance, Defendants,**

and

**Dakotaland Autoglass, Inc., and Norm Feldman's Glass Company, Inc., Intervenors.**

Civ. 93–3006.

United States District Court, D. South Dakota, Central Division.

Oct. 11, 1994.

---

David A. Gerdes, Pierre, SD, for plaintiff.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, SD, for defendants.

John L. Brown, Pierre, SD, for intervenors.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, District Judge.

Plaintiff Allstate Insurance Company (Allstate) brought this action attacking the constitutionality of Senate Bill 220 ("SB 220") adopted in the 1992 South Dakota Legislative Session, and which is now codified at SDCL §§ 58–33–72 and 58–33–73. Plaintiff Allstate has moved for summary judgment on its claims. The defendants, the State of South Dakota and its officials and intervenors (State) have filed a joint motion for summary judgment. Oral argument was heard on the motion on May 24, 1994, and the Court took the matter under advisement. Summary judgment will be granted to Allstate for the reasons below.

### Background

Allstate sells automobile insurance policies throughout most of the United States. Allstate has an agreement with USA–GLAS Network, which was formed by Globe Glass and Mirror Company, relating to automobile glass repair and replacement for their policyholders. In addition to Globe Glass outlets, USA–GLAS enters into contracts with independent glass repair businesses for the provision of services to Allstate policyholders. Allstate refers its policyholders to USA–GLAS by supplying them with the network's toll-free phone number. Policyholders are

informed that USA–GLAS can do the repair or replacement work and bill Allstate directly. The policyholder is only responsible for paying any deductible applicable under the policy. USA–GLAS and Allstate guarantee the glass work for as long as the policyholder owns the car. USA–GLAS requires all of its contracting businesses to meet its standard terms.

These terms include providing service meeting state and federal safety standards and USA–GLAS quality standards, and negotiated prices less than the contracting businesses would normally charge.

Allstate is able to save transactional costs by utilizing computerized electronic billing and payments with the network. The network charges Allstate less than independent businesses, under a price cap and guarantee not to be charged more than any competing insurance company within the preceding thirty days. The total cost of services provided by the networks is therefore lower for Allstate. Allstate also receives "Globe Appreciation Units" and monetary payments from USA–GLAS based upon the amount of business Allstate sends to the network.

Concern from independent glass businesses over the loss of revenue caused by such network arrangements led to the introduction of SB 220 in the 1992 South Dakota Legislative Session. SB 220 was passed by the legislature over Governor George Mickelson's veto in March of 1992.

SDCL § 58–33–72 prohibits an insurance company from requiring or recommending that an automobile insurance policyholder "use a particular company or location for the providing of automobile glass replacement or repair services or products insured in whole or in part by that policy."

SDCL § 58–33–73 prohibits an insurer from advising its insureds of the existence of networks such as USA–GLAS and contains other restrictions effectively barring any insurance company from using such networks in South Dakota.

Allstate filed this action challenging the validity of SDCL §§ 58–33–72 and 58–33–73 on four separate grounds as shown in the issues set forth below. Other facts pertinent

to the issues will be presented in the discussion and analysis. For convenience, the statutes will be collectively referred to as SB 220 throughout the remainder of this opinion.

## Issues

I. Is SB 220 an unconstitutional restriction on commercial speech?

II. Is SB 220 an unconstitutional restriction on interstate commerce?

III. Is SB 220 preempted by federal antitrust statutes?

IV. Is SB 220 in violation of the Article III, § 21 of the South Dakota Constitution?

## Discussion

The parties have moved for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The Court must view the facts in the light most favorable to the non-moving party. A presumption of constitutionality attaches to legislative enactments, and the party challenging a statute bears the burden of overcoming this presumption. *Schilb v. Kuebel*, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971).

## I. Freedom of Commercial Speech.

■ Allstate argues that the restrictions placed upon it by SB 220 constitute a restriction of commercial speech beyond that allowed under the First Amendment of the United States Constitution. The communication at issue is the dissemination of information regarding automobile glass repair businesses and services between insurers and their automobile insurance policyholders. All the parties acknowledge that this communication is commercial speech subject to the protections of the First Amendment's "Free Speech" clause. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

■ Only false, deceptive, or misleading commercial speech may be banned by the State without further justification. *Ibanez v. Florida Dep't of Business & Prof. Reg., Bd.*

*of Accountancy*, —— U.S. ——, ——, 114 S.Ct. 2084, 2088, 129 L.Ed.2d 118 (1994). The State argues that only supplying a policyholder with information about automobile glass businesses that are under a network contract with the insurer, and no others, is deceptive and misleading because it fails to disclose the network business relationship and advantages to the insurer (with detriment to independent businesses) if they are used. Allstate is clearly gaining reduced costs at the expense of independent glass businesses who would clearly charge it more than USA–GLAS. But policyholders are not harmed by using a network-affiliated glass business since they would only pay the policy deductible, if applicable, no matter which company did the work. Because recommending USA–GLAS causes no harm to the policyholder, the speech is not deceptive or misleading so as to be subject to a ban.

The state argues that it has a substantial state interest in (a) maintaining policyholder choice of glass replacement services, (b) preventing local business closures, and (c) protecting consumer safety. "Commercial speech that is not false, deceptive, or misleading can be restricted, but only if the State shows that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest." *Ibanez,* —— U.S. at ——, 114 S.Ct. at 2088.

■ The burden is on the State to demonstrate that its restrictions are tailored in a reasonable manner to serve a substantial state interest. *Edenfield v. Fane,* —— U.S. ——, ——, 113 S.Ct. 1792, 1798, 123 L.Ed.2d 543 (1993). The State has failed to meet its burden.

With regard to (a) choice, the State has, since 1986, had legislation in place preventing an insurer from requiring the use of a particular auto glass repair or replacement business. SDCL § 58–33–67(5), effective July 1, 1986 (SL 1986, ch. 422, § 2).

As to (b) preventing local businesses from closing, the State cannot properly protect them from the networks who will charge a lower price and thereby help the local businesses maintain their profit margins. As Governor Mickelson stated in his veto message, this statute constitutes mandated price-fixing, and that is not a proper means of helping local glass dealers. Further, the local companies are free to join the USA–GLAS network, and intervenor Norm Feldman's Glass Company, Inc. has done so. The state also has anti-trust laws in place, which would protect local business from anti-trust violations.

As to (c) protecting consumer safety, no showing has been made that USA–GLAS work is inherently defective and SB 220 simply contains no consumer safety provisions.

SB 220 is clearly an unconstitutional restriction on commercial speech and therefore, this Court must declare it to be unconstitutional. Although that issue would be dispositive, the other issues will also be addressed so they can be given appellate review if desired.

## II. Commerce Clause Violation.

■ Allstate also argues that SB 220 unduly burdens interstate commerce because of its restrictions on the automobile glass networks like USA–GLAS to the advantage of independent local auto glass businesses. SB 220 effectively prevents Allstate from getting any advantage in contracting with USA–GLAS by prohibiting it from telling its insureds about the network. The networks are by their nature interstate in nature. The effect of SB 220 is to deprive interstate networks of any benefits in contracting with insurance companies to decrease price competition for local glass businesses.

The State argues that SB 220 regulates out-of-state and in-state insurers· and networks evenhandedly to further three local purposes: (1) protecting South Dakota auto glass businesses from the effects of unfair acts and practices by the insurers and networks; (2) maintaining policyholder choice of businesses; and (3) protecting consumer safety by assuring prices sufficient to provide quality products and services.

SB 220 must be struck down if its burden on interstate commerce is excessive compared to the State's legitimate local purposes in enacting the statute. *Pike v. Bruce*

*Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). A statute burdening interstate commerce cannot be tolerated where the legitimate local purposes of the statute can be "promoted as well with a lesser impact on interstate activities." *Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 37, 100 S.Ct. 2009, 2016, 64 L.Ed.2d 702 (1980).

State anti-trust laws would serve the first of the State's purposes equally well. SDCL § 58–33–67(5) already requires that insurers maintain policyholder choice of automobile repair services, which meets the State's second purpose. Finally, there is nothing in this record indicating that USA–GLAS with its lesser prices to Allstate is providing auto glass of lesser quality or safety than that provided by local glass businesses. In addition, consumer safety laws would more effectively promote consumer safety than providing price protection to local businesses.

SB 220 does not directly discriminate against interstate commerce but it clearly "impose[s] an excessive burden on interstate trade when considered in relation to the local benefits conferred." *C & A Carbone, Inc. v. Town of Clarkstown*, —— U.S. ——, ——, 114 S.Ct. 1677, 1687, 128 L.Ed.2d 399 (1994) (O'Connor, J., concurring) (applying *Pike* standard). The statute is therefore also unconstitutional under the Commerce Clause.

### III. Anti–Trust Preemption.

■ Allstate also argues that SB 220 is preempted by the Sherman Anti Trust Act, 15 U.S.C. § 1, *et seq.* and must yield to this federal legislation under the Supremacy Clause of the Constitution.

The State argues that there is no preemption involved because the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1013, would exempt this insurance regulation from the federal anti-trust laws. The Court must respectfully disagree, as the insurance practice regulated in SB 220 does not have "the effect of transferring or spreading a policyholder's risk." *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982).

The State also argues that SB 220 is not preempted because the regulations do not constitute a *per se* violation of the anti-trust laws in all cases. Both sides have presented affidavits from experts witnesses contesting the insurers' market power and the effect of automobile insurers contracting with auto glass repair service networks. The parties disagree over the effect of the SB 220's price limitations and whether the result constitutes price fixing.

The market consolidation possible under network automobile glass repair networks, and the so-called "kickbacks" to insurers based on referrals to the network, raise substantial anti-trust concerns for the State. Given the unique nature of the business relationships at issue, and the particular facts involved in the state of South Dakota, several factual issues must be decided before preemption can be found. *Rice v. Norman Williams Co.*, 458 U.S. 654, 659, 102 S.Ct. 3294, 3298–99, 73 L.Ed.2d 1042 (1982). Therefore anti-trust preemption cannot be decided on the motions for summary judgment, and the Court declines to do so.

### IV. S.D. Constitution Art. III, § 21.

■ The title of SB 220 is "An Act to Prohibit Motor Vehicle Insurance Companies from Directing Insureds to Specific Autoglass Companies for Repair of Their Vehicles." Article III, § 21 of the South Dakota Constitution states: "No law shall embrace more than one subject, which shall be expressed in its title." The title expresses a general subject, restrictions on insurers in "directing" their policyholders to a specific automobile glass repair business, and is sufficient to put all interested persons on notice of the regulated subject. *Accounts Management v. Williams*, 484 N.W.2d 297, 302–303 (S.D.1992). SB 220 does not violate Article III, § 21 of the South Dakota Constitution.

### Conclusion

SB 220, codified at SDCL §§ 58–33–72 and 58–33–73, is unconstitutional because it imposes excessive restrictions on commercial speech and the statutes in question impose an undue burden on interstate commerce. The State's concerns about the automobile glass repair or replacement networks are legitimate concerns. They must be ad-

dressed in ways that are less restrictive of commercial speech and interstate commerce.

Therefore, upon the record herein,

IT IS ORDERED:

(1) That Plaintiff's Motion for Summary Judgment, Doc. 36, is granted.

(2) That Defendant and Intervener's Joint Motion for Summary Judgment, Doc. 47, is denied.

(3) That Plaintiff's requested relief is granted in that Senate Bill 220 of the 1992 South Dakota State Legislature, now codified at SDCL §§ 58–33–72 and 58–33–73, is declared unconstitutional and the State of South Dakota is henceforth permanently enjoined from enforcing those statutes.

(4) That the Clerk of Courts shall enter a Judgment consistent herewith.