Lance **SILVERMAN**, D.C., Plaintiff,

v.

John K. **WALKUP**, in his official capacity as Attorney General of the State of Tennessee; and Tennessee Board of Chiropractic Examiners, Defendants.

No. 1:98–CV–208.

United States District Court, E.D. Tennessee.

Sept. 29, 1998.

Stephen S. Duggins, James C. Heartfield, Heartfield & Duggins, Chattanooga, TN, for plaintiff.

Michelle Hohnke Joss, Asst. Tennessee Atty. Gen., Nashville, TN, for defendant.

1. The Board of Chiropractic Examiners.

## MEMORANDUM OPINION

EDGAR, District Judge.

■ Plaintiff Lance Silverman, a chiropractor, brings this suit to enjoin enforcement of TENN.CODE ANN. § 63–4–114(5) which prohibits solicitation by chiropractors. Silverman asserts that the statute violates his rights under the First Amendment to the United States Constitution. He also seeks declaratory and monetary relief. On July 9, 1998, this Court, after a brief hearing, entered a temporary restraining order enjoining the defendants, John K. Walkup, in his official capacity as Tennessee's Attorney General, and the Tennessee Board of Chiropractic Examiners (herein collectively referred to as the "State") from enforcing the statute pending a hearing on Silverman's application for a preliminary injunction. On September 21, 1998, the Court held a hearing on Silverman's application for a preliminary injunction pursuant to Rule 65 of the FEDERAL RULES OF CIVIL PROCEDURE. Because the State has not shown that the statute is sufficiently narrowly drawn to address the problems which the State has identified, a preliminary injunction will issue.

■ In deciding whether to issue a preliminary injunction, this Court evaluates four factors: "(1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir.1995).

## I. Likelihood of Success on the Merits

### A. The Tennessee Statute

TENN.CODE ANN. § 63–4–114(5) reads as follows:

The board[1] has the duty and authority to suspend for a specified time, within the discretion of the board, or to revoke any license to practice chiropractic, or to otherwise discipline any licensee, or refuse to grant any certificate of fitness, whenever the licensee or applicant is found guilty of

any of the following acts or offenses ... (5) *Solicitation, in person or by live telephone contact, by a licensee, or by an agent, servant, employee, or independent contractor of a licensee, of a patient with whom a licensee has no family or prior professional relationship;* however, this not prohibit solicitation by targeted direct mail advertising or other forms of written, radio, or television advertising; provided, that the advertising does not involve coercion, duress, or harassment and is not false, deceptive or misleading. . . .

(Footnote added) (Emphasis added). The dispute in this case revolves around the underlined first clause of the statute.

### B. Facts

Silverman recently moved to Chattanooga, Tennessee to begin, along with a partner, the practice of chiropractic medicine. He has employed various forms of traditional advertising, which he has found to be generally ineffective. He has, however, been successful in obtaining patients by means of actions which could fairly be construed as "solicitation" proscribed by the first clause of TENN. CODE ANN. § 63–4–114(5). He has handed out business cards and engaged in conversations with persons in areas of substantial pedestrian traffic; and has manned booths at health fairs and shopping malls where he has initiated conversations with passers by about the benefits of his chiropractic services. Although these activities would appear to come within the blanket prohibition of "solicitation" contained in the statute, the State asserts that it does not consider these particular actions to be solicitation. Instead, the State says that the statute is directed at prohibiting telemarketing by chiropractors. Silverman has also engaged in telemarketing.

The proof in this case shows that this telemarketing can roughly be divided into two categories. The first category is what might be called "general" telemarketing. Here, the chiropractor hires a telemarketer to make cold calls to persons who are asked if they have health problems, and if such problems are identified, persons are asked if they want to visit the chiropractor for a free evaluation. The other telemarketing category is "accident" telemarketing. Here, the chiropractor either personally or through a telemarketer makes frequent inspections of automobile accident reports, which in Tennessee are public documents. From these reports, the chiropractor learns who may have been injured in auto accidents. Usually, accident victims who are not at fault are singled out. Calls are then made to those individuals within hours or days after the accident.

What transpires during this "accident" telemarketing is illustrated by the stories of Tara Durham and Donna Frizzell, both Chattanooga residents who were solicited by telemarketers acting on behalf of Dr. Silverman. Ms. Durham, age 18, was injured in an auto accident in which she was not at fault. Shortly after returning home from the hospital emergency room, she was called by a telemarketer named Mark Cornelius. Mr. Cornelius asked her about her medical symptoms and told her that she needed to see Dr. Silverman, who was a "back specialist." She was told that there would be no cost to her because Silverman's fees would be billed to the other driver's insurance company. Ms. Durham did go to see Silverman but was not satisfied with his services, and did not return after her third visit. Silverman dunned her for awhile with collection letters, and when she did not pay, he filed a collection suit against her. Ms. Durham did not pay Silverman because she, perhaps naively, understood that Silverman would collect from the other driver's insurance carrier. Silverman dropped the collection suit after discussing the matter with a State fraud investigator.

Donna Frizzell is a paralegal, who was injured in an automobile accident in which she was not at fault. She received a phone call from someone who suggested that she call Mark Cornelius, who was "with the insurance company." While she was on pain medication of the kind that "puts you to sleep and doesn't let you think" she called Cornelius, who appeared to be very concerned and sympathetic about her injuries. In contemporary parlance, he "felt her pain." Cornelius put her on hold; then in very direct terms, told her that he had made an appointment with Silverman and that she "had to go." Silverman was touted as a "trauma

**778**

chiropractic specialist." Cornelius did not volunteer that he was not affiliated with an insurance company. However, when Frizzell pressed him on this he did say that he was not representing an insurer, but was indeed affiliated with the "Accident, Safety and Health Association." Mrs. Frizzell did not keep the appointment with Dr. Silverman because her husband would not let her. Cornelius later called back to again try to get her to see Silverman.

The record contains affidavits from four other Tennesseans who had experiences with other chiropractors similar to those which Ms. Durham and Mrs. Frizzell had with Silverman. There is also extensive antidotal evidence contained in newspaper articles which have recently run in THE TENNESSEAN (Nashville) and THE CHATTANOOGA TIMES. Accident victims have been told that even if they were not injured, symptoms and injuries could occur later; and because of this they should have an immediate, free chiropractic examination. Many solicitees have expressed anger at having their privacy invaded by chiropractors and their telemarketers, who have lifted personal information about them from accident reports. They have also complained about feeling pressure to see a chiropractor at a time when their judgment was clouded by the trauma of an accident, and by pain and other medication.

### C. Analysis

At least since the Supreme Court's decision in *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), it has been clear that commercial speech is protected by the First Amendment. The application of this general legal principle to the speech of professionals has, however, proved to be somewhat difficult, and has not produced uniform agreement. The Supreme Court in its most recent decision on the subject, *Florida Bar v. Went For It, Inc.,* 515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995), was split five to four.

It is generally understood that most advertising by professionals is protected by the First Amendment. *Ibanez v. Florida Dept. of Business & Professional Regulation,* 512 U.S. 136, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994) (yellow pages), *Shapero v. Kentucky Bar Ass'n,* 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988) (targeted direct mailings); *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (newspaper advertising); *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (newspaper advertising). It has always been recognized, of course, that the First Amendment does not protect false, deceptive or misleading commercial speech. *Ibanez,* 512 U.S. at 142, 114 S.Ct. 2084; *Zauderer,* 471 U.S. at 638, 105 S.Ct. 2265.

The courts have drawn a rather indistinct line between "advertising" and "solicitation." While both activities are considered to be commercial speech, courts have sometimes, though not always, afforded more protection to what they have called advertising than to what they have termed solicitation. For example, in *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), the Supreme Court said that the First Amendment did not permit lawyers to personally solicit accident victims in violation of Ohio law. On the same day, however, the Supreme Court forbad South Carolina from prohibiting solicitation by lawyers for nonprofit organizations. *In re Primus,* 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978). More recently, the Supreme Court has said that Florida's ban on personal solicitation of clients by accountants ran afoul of the First Amendment. *Edenfield v. Fane,* 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). On the other hand, the Eleventh Circuit has recently upheld Georgia's broad-based ban on in-person solicitation by lawyers. *Falanga v. State Bar of Georgia,* 150 F.3d 1333 (11th Cir.1998). Such restrictions on lawyer solicitation apply in Tennessee, TENNESSEE SUPREME COURT RULE 8, D.R. 2–104(B)(1), and in all 50 states and the District of Columbia. *See Falanga,* 150 F.3d at 1336 n. 5.

■ Commercial speech that is not false, deceptive or misleading may be restricted to some extent. Any such restriction, however, is subject to "intermediate" scrutiny using the test developed in *Central Hudson Gas & Elec. Corp. v. Pub. Service Comm'n of New*

*York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Florida Bar,* 515 U.S. at 623–24, 115 S.Ct. 2371. This test contains three criteria: first, the State must assert a substantial interest in support of TENN.CODE ANN. § 63–4–114(5); second, the State must demonstrate that the statute materially advances that interest; and third, the statute must be narrowly drawn. *Central Hudson,* 447 U.S. at 564–66, 100 S.Ct. 2343; *Florida Bar,* 515 U.S. at 624–25, 115 S.Ct. 2371; *Edenfield* 507 U.S. at 767, 113 S.Ct. 1792.

This particular case, however, presents an issue which must be resolved before a *Central Hudson* analysis can be performed. That issue is—what does the statute prohibit? Clearly, the statutory language contains a broad statutory prohibition of in-person or telephone contact. However, as pointed out above, the State does not contend that the statute bans such activities as talking to prospective patients on the street or at a health fair or shopping mall. The State's rationale is that this activity is advertising and does not amount to solicitation as the State would define it. The State refers us to dictionary definitions of "solicit," and the Tennessee Supreme Court's definition of "solicit" in TENNESSEE SUPREME COURT RULE 8, DR 2–104(A)(1).[2] The courts have not provided any definitional distinction between advertising and solicitation. In reality, the meaning of these terms has a substantial overlap. For example, the regulation of the State Board of Chiropractic Examiners reads as follows:

> Advertising—Includes, but is not limited to business solicitation, with or without limiting qualifications, in a card, sign, or device issued to a person; in a sign or marking in or on any building; or in any newspaper, magazine, directory, or other printed matter. Advertising also includes business solicitations communicated by individual, radio, video, or television broadcasting or any other means designed to secure public attention.

Chap. 0260–2, GENERAL RULES GOVERNING CHIROPRACTIC EXAMINERS § 0260–2–.01(1). While the State says that the solicitation clause of TENN.CODE ANN. § 63–4–114(5) is addressed only to "telephone solicitation," the statute is clearly broader than that. As the State points out, when the constitutionality of a state statute is challenged, the Court has an obligation to construe it, if possible, so as to comply with constitutional limitations. *Brown v. Board of Comm'rs of City of Chattanooga, Tennessee,* 722 F.Supp. 380, 399 (E.D.Tenn.1989). However, in this case the construction which the State desires to place upon the statutory language is not possible without contorting that language beyond all reason. The statute clearly proscribes both personal and telephonic solicitation.

There is more than sufficient proof in the record of this case which would satisfy the *Central Hudson* test on properly drawn legislation directed at "accident" telemarketing by or on behalf of chiropractors. The first prong of that test is satisfied because the State has advanced a substantial interest to be served by prohibition of such telemarketing. Included in these interests are the State's interest in protecting the "tranquility, and privacy of the home" caused by the intrusion of telephone calls using personal information gleaned from accident reports. *See Florida Bar,* 515 U.S. at 625, 115 S.Ct. 2371 (*quoting Carey v. Brown,* 447 U.S. 455, 471, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)). Another such substantial interest is the protection of people from overreaching and pressure at a time when their judgment may be impaired by medication and the trauma of a recent accident. A final substantial interest is served by the State's interest in establishing standards for licensing and regulating professional practitioners of chiropractic medicine in such a way as to protect the reputation of the profession.[3] *See Florida Bar,* 515 U.S. at 625, 115 S.Ct. 2371 (with respect to attorneys). The State need sub-

---

2. "'Solicit' means contact in person, by telephone, telegraph, facsimile, computer on-line transmission or by other communication directed to a specific recipient and includes any written form of communication directed to a specific recipient. . . ."

3. Several persons who have been the victims of "accident" telemarketing came away with a decidedly negative impression of chiropractors. One referred to them as "high tech ambulance chasers."

stantiate only one such interest to satisfy the first element of the *Central Hudson* test. *Id.* at n. 1.

The second prong of *Central Hudson* is satisfied by current version of TENN.CODE ANN. § 63–4–114(5). The telemarketing harms that the statute addresses are real. There is no doubt that telemarketers are constantly getting personal information from accident reports, immediately calling accident victims at their homes, and pressuring them in such a way as to lead them to make hasty decisions about their health.[4] The Tennessee statute would prohibit such calls.

The third *Central Hudson* prong requires that the statute's restrictions on solicitation reasonably fit the desired objective. The statute must be "narrowly tailored to achieve the desired objective." *Florida Bar,* 515 U.S. at 632, 115 S.Ct. 2371 (*quoting Board of Trustees of S.U.N.Y. v. Fox,* 492 U.S. 469, 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989)). The blanket ban of both in-person as well as telephone solicitation in § 63–4–114(5) does not satisfy this part of the *Central Hudson* test. As this case demonstrates, it is difficult to draw a clear distinction between solicitation and advertising. If the State wishes to prohibit "accident" telemarketing by chiropractors, legislation imposing a 30–day ban similar to the 30–day direct mail ban in *Florida Bar* might be appropriate. The Fifth Circuit, following the Supreme Court's lead in *Florida Bar,* has upheld such a restriction on direct mail solicitation by attorneys. *Moore v. Morales,* 63 F.3d 358 (5th Cir.1995). The State has not shown why a 30–day ban would not address the interests which it has identified. It must be concluded that TENN.CODE ANN. § 63–4–114(5) is not sufficiently narrowly drawn to pass constitutional muster. The State bears the responsibility of upholding a restriction on commercial speech. *Fox,* 492 U.S. at 480, 109 S.Ct. 3028. The State has not carried that burden with respect to § 63–4–114(5) as it is currently enacted. *Revo v. Disciplinary Bd. of Supreme Court for the State of New Mexico,* 106 F.3d 929, 936 (10th Cir.1997).[5] For this reason, there is a substantial likelihood that the plaintiff will prevail on the merits.

## II. Irreparable Injury

The loss of First Amendment freedom, for even minimal periods of time, constitutes an irreparable injury for purposes of granting injunctive relief. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Dayton Area Visually Impaired Persons, Inc. v. Fisher,* 70 F.3d 1474, 1489–90 (6th Cir.1995); *Newsom v. Norris,* 888 F.2d 371, 378 (6th Cir.1989).

## III. Harm to Others—The Public Interest

Given the First Amendment problems posed by the Tennessee statute, it cannot be said that a preliminary injunction against its enforcement would harm others or be detrimental to the public interest.

In sum, all of the preliminary injunction factors weigh in favor of the plaintiff. A preliminary injunction will issue enjoining the State from enforcing TENN.CODE ANN. § 63–4–114(5). A conference to schedule the disposition of the remaining issues in the case will be held by the Court on **Wednesday, November 18, 1998, at 4:30 p.m. EDT.**

A preliminary injunction will issue.

### PRELIMINARY INJUNCTION

For the reasons expressed by the Court in its memorandum opinion filed herewith, the defendants are hereby **ENJOINED** from enforcing TENN.CODE ANN. § 63–4–114(5) pending a hearing on the merits of this case.

---

4. Some of the representations which have been made by telemarketers might be sanctioned as misrepresentations and fraud.

5. The record is not sufficiently developed to permit comment on whether the State may constitutionally prohibit general telemarketing by chiropractors.