Richard B. SCHWARTZ, Lance L. Stevens, Andy Stewart, Mark W. Davis, Guice & Guice, Inc., Richard Sackett Executive Consultants, Inc., Mississippi Association of Broadcasters, and Public Citizen, Inc., Plaintiffs

v.

W. Scott WELCH, III, President, The Mississippi Bar; L.F. Sams, Jr., First Vice President and President–Elect, The Mississippi Bar; Paula A. Graves, Second Vice President, The Mississippi Bar; Billie J. Graham, Chairman, Committee

on Professional Responsibility, The Mississippi Bar; Donald C. Dornan, Jr., Benjamin E. Griffith, Ava N. Jackson, John G. Jones, and T. Calvin Wells, Members of the Complaints Committee, The Mississippi Bar, Defendants.

No. 3:94–CV–569BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

June 20, 1995.

James L. Robertson, Wise, Carter, Child & Caraway, Jackson, MS, George Cochran, University, MS, and David C. Vladeck, Public Citizen Litigation Group, Washington, DC, for plaintiffs.

Robert E. Sanders, Mississippi Atty. General's Office, Jackson, MS, for defendants.

### RULING OF THE COURT
BARBOUR, Chief Judge.

## I. INTRODUCTION

The Court has conducted a bench trial of this matter and has considered the testimony, the other evidence presented into the record, the briefs and closing arguments of counsel. The Court enters its opinion by way of these findings of fact and conclusions of law.

This is a declaratory judgment action, wherein Plaintiffs, under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenge the constitutionality of certain of the Amendments to Rule 7, Information About Legal Services, Mississippi Rules of Professional Conduct ("the new Rules"), as promulgated by the Supreme Court of Mississippi on June 22, 1994. The new Rules restrict lawyer advertising in various ways, and Defendants in this action have enforcement authority over those Rules. Plaintiffs are four attorneys, licensed and actively engaged in the practice of law in Mississippi,[1] two advertising and public relations corporations, both authorized to do and doing business in Mississippi ("the advertising agency Plaintiffs"),[2] the Mississippi Association of Broadcasters ("MAB," or "the media plaintiffs"),[3] and Public Citizen, Inc. ("Public Citizen"), a consumer advocacy organization.[4] Defendants are W. Scott Welch, III, President of The Mississippi Bar, L.F. Sams, Jr., President–Elect of The Mississippi Bar, Paula Graves, Second Vice President of The Mississippi Bar, and the Chairman and members of the Committee on Professional Responsibility, formerly known as the Complaints Committee, of The Mississippi Bar.[5] Each of the Defendants is sued in his official capacity.

Each of the lawyer Plaintiffs claims he has been forced to restrict or discontinue one or more of the advertisements he has used in the past or wishes to use now, or risk prosecution and discipline by Defendants. The advertising agency Plaintiffs contend that, because the new Rules prohibit or restrict certain advertising techniques, they are hindered in their ability to propose and prepare advertisements for the lawyer Plaintiffs who comply with the new Rules. They also claim they will suffer a loss of income, due to reduction in volume of broadcast advertising as a direct result of the new Rules. MAB also claims its members will lose income because the new Rules will decrease the volume of broadcast advertising by lawyers. Public Citizen claims the new Rules will deprive its members and all Mississippians of information regarding the availability and price of legal services.

### A. Procedural Background

Plaintiffs commenced this action on September 21, 1994. On October 13, 1994, they filed a Motion for Preliminary Injunction, and on November 14, 1994, this Court entered a Consent Order advancing the case on its docket for trial on the merits in lieu of hearing the Motion for Preliminary Injunction and providing for a moratorium on enforcement of the new Rules with two exceptions. The Order provided that the disclosures required by Rules 7.2(d)[6] and 7.6[7]

---

1. These attorneys are Richard B. Schwartz, Lance L. Stevens, Andy Stewart and Mark W. Davis.

2. These firms are Guice & Guice, Inc., based in Biloxi, Mississippi, and Richard Sackett Executive Consultants, Inc., based in New Orleans, Louisiana. Both firms have assisted one or more of the lawyer plaintiffs in preparing television advertisements that have been telecast in Mississippi.

3. MAB is comprised of some fifteen Mississippi-based television stations and 120 Mississippi-based radio stations, many of which have broadcast advertisements by the lawyer plaintiffs.

4. Public Citizen claims a nationwide membership of over 140,000, "approximately 462 of whom reside in Mississippi and are persons who in the past have been, at present are, and some of whom will in the future be in the market in Mississippi for competent legal services...." Compl. at 5.

5. The Chairman of the Committee is Billie J. Graham. Members of the Committee are Donald C. Dornan, Jr., Benjamin E. Griffith, Ava N. Jackson, John G. Jones, and T. Calvin Wells.

6. Rule 7.2(d) requires that all broadcast advertisements state "The Mississippi Supreme Court advises that a decision on legal services is important and should not be based solely on advertisements."

7. Rule 7.6 provides that, if the advertisement communicates that a lawyer practices in a partic-

would remain in full force and effect. This Court conducted a bench trial of this matter from February 27 through March 2, 1995.

## B. The Challenged Rules [8]

Plaintiffs challenge the new Rules 7.1, 7.2 and 7.6, as follows:

(1) The mandatory disclosure requirement of Rule 7.2(d) for all lawyer advertisements, which requires use of these words:

> The Mississippi Supreme Court advises that a decision on legal services is important and should not be based solely on advertisements.

(2) The mandate of Rule 7.6(a) that any advertisement suggesting an area of practice include the following statement:

> Listing of these previously mentioned area(s) of practice does not indicate any certification of expertise therein.

(3) The mandatory disclosure requirement of Rule 7.2(1), which states:

> All advertisements and written communications provided for under these Rules shall disclose the geographic location, by city or town, of the office in which the lawyer or lawyers who will actually perform the services advertised principally practice law. If the office location is outside a city or town, the county in which the office is located must be disclosed.

(4) The disclosure required by Rule 7.2(h) which states:

> Every advertisement and written communication that contains information about the lawyer's fee, including those which indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee.

(5) The disclosure required by Rule 7.1(a), "as authoritatively interpreted through Official Comments," [9] that prohibits

an advertisement for a law firm which states that all of the firm's lawyers are juris doctors but does not disclose that a juris doctorate is a law degree rather than a medical degree of some sort and that virtually any law firm in the United States can make the same claim.

(6) The disclosure required by Rule 7.2(b) providing that, if the single voice otherwise allowed in an advertisement by Rule 7.2(b) is not that of an attorney affiliated with the firm or a full time employee of the firm,

> there shall be prominently displayed at the beginning and end of said advertisement either orally or in writing, a notice to the public in the following form: "Actor portrayal" and/or "Paid Endorsement."

Plaintiffs challenge the new Rules individually, but also request that the Court strike them down collectively, arguing that Defendants cannot prove that the new Rules, individually or as a group, are a justified, constitutional restriction of Plaintiffs' commercial speech rights.

## II. CONCLUSIONS OF LAW

### A. Standing of Advertising, Media and Consumer Plaintiffs

■ Defendants challenge the standing to bring this action of the advertising firm Plaintiffs, the media Plaintiffs, and the consumer Plaintiffs. They do not challenge the standing of the lawyer Plaintiffs. The Court holds that each of these groups, through pleadings and evidence presented at trial, have proven they are proper plaintiffs in this lawsuit. While the Court recognizes it is "under an independent obligation to examine [its] own jurisdiction," *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) (citing *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)), and that standing may not be "inferred argumentatively from aver-

---

ular field, it must state that "Listing of these previously mentioned area(s) of practice does not indicate any certification of expertise therein."

**8.** Although the Court will discuss each of the Rules in the body of this Opinion and Order, it

attaches as Appendix A both the challenged Rules and the Comments thereto.

**9.** The Court addresses the effect of the guidance provided by the Comments elsewhere in its Opinion.

ments in the pleadings," *id.* (citing *Grace v. American Central Ins. Co.,* 109 U.S. 278, 284, 3 S.Ct. 207, 210–11, 27 L.Ed. 932 (1883)), the Court finds that Plaintiffs have presented evidence of particularized injury sufficient to support standing to sue in this case. *See id.* (stating that evidence of standing "must affirmatively appear in the record") (citing *Mansfield C. & L.M.R. Co v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884)).

The United States Supreme Court has written that "the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides." *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 651, 105 S.Ct. 2265, 2282, 85 L.Ed.2d 652 (1985). That value to consumers, and the specific allegations of injury of the Plaintiff members of Public Citizen, Inc., is sufficient to provide standing to the consumer Plaintiffs. As to the advertising agency and media Plaintiffs, the Court holds that they, too, have standing to bring this suit.

The Supreme Court addressed the issue of advertiser standing in *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), wherein the advertiser plaintiffs challenged the validity of a municipal ordinance prohibiting certain outdoor advertising displays. Plaintiffs brought suit to enjoin enforcement of the ordinance. In resolving the standing issue in favor of the plaintiffs, the Court wrote:

> [W]e have never held that one with a "commercial interest" in speech also cannot challenge the facial validity of a statute on the grounds of its substantial infringement of the First Amendment interests of others. Were it otherwise, newspapers, radio stations, movie theaters and producers—often those with the highest interest and the largest stake in a First Amendment controversy—would not be able to challenge government limitations on speech as substantially overbroad.

**10.** The *Central Hudson* four-part test for determining the validity of government restrictions on commercial speech is as follows:

(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is val-

*Metromedia,* 453 U.S. at 504 n. 11, 101 S.Ct. at 2891 n. 11. The Court then applied the four-part test from *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 563–566, 100 S.Ct. 2343, 2350–2351, 65 L.Ed.2d 341 (1980) [10] for determining validity of government restrictions on commercial speech, *id.* at 507, 101 S.Ct. at 2892, and held that the ordinance was invalid under the First Amendment. *Id.* at 521, 101 S.Ct. at 2899. Although *Metromedia* involved advertising plaintiffs, this Court holds that the reasoning of the Court in that case applies to media Plaintiffs, as well as the advertising agency Plaintiffs, in the case at bar.

Pursuant to the requirements laid out by the Fifth Circuit in *Finch v. Mississippi State Medical Ass'n, Inc.,* 585 F.2d 765 (5th Cir.1978), all the Plaintiffs have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Finch,* 585 F.2d at 771 (citations omitted). Accordingly, the Court holds that all Plaintiffs have standing sufficient to bring this lawsuit.

## B. Applicable Legal Standard

█ The Supreme Court has held that lawyer advertising is commercial expression to which protections of the First Amendment apply, and Defendants do not claim otherwise. *See, e.g., Peel v. Attorney Registration & Disciplinary Comm'n,* 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990); *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). The question before the Court in this case, then, is whether the new Rules unconstitutionally ban speech that is not false, deceptive, or misleading, or restrict such speech without "a showing that the restriction directly and materially ad-

id only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. *Central Hudson,* 447 U.S. at 563–66, 100 S.Ct. at 2350–51, *construed in Metromedia,* 453 U.S. at 507, 101 S.Ct. at 2892.

vances a substantial state interest in a manner no more extensive than necessary to serve that interest." *Ibanez v. Florida Dep't of Business and Professional Regulation, Bd. of Accountancy,* —— U.S. ——, ——, 114 S.Ct. 2084, 2085, 129 L.Ed.2d 118 (1994).

Defendants claim the central dispute in this case is whether Plaintiffs' challenge to the new Rules is a "facial challenge" or an "as applied" challenge. Defendants claim that since no Plaintiffs are being prosecuted for a violation of any of the new Rules, this action presents a facial challenge, and Plaintiffs therefore have the burden to show that no set of circumstances exist under which the rules would be valid. Defs.' Proposed Conc. of Law, ¶ 1. Although the distinction between the two standards is important,[11] the Court has little difficulty concluding that this case involves an "as applied" challenge to the new rules, and that the rules therefore should be scrutinized under the *Central Hudson* test for constitutionality. The Court finds that Defendants take an overly narrow view of what must occur for state regulations to be "applied" to Plaintiffs. Defendants essentially argue that, unless and until the State takes steps to enforce its regulations, Plaintiffs may not mount an "as applied" attack, and are limited instead to a facial challenge. This contention is not supported by Supreme Court rulings on commercial speech rights.

The Court finds that Plaintiffs here are in the precise legal posture as the plaintiff Scott Fane ("Fane") in the recent case of *Edenfield v. Fane,* —— U.S. ——, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). In *Edenfield,* Fane sought declaratory and injunctive relief barring enforcement of Florida rules prohibiting in-person solicitation by certified public accountants, on the ground that the rules violated the First Amendment. Though the state had taken no enforcement action against Fane, he alleged "that but for the prohibition he would seek clients through personal solicitation and would offer fees below prevailing rates." *Fane,* —— U.S. at ——, 113 S.Ct. at 1797. In its decision the Court wrote:

> It is well established that "[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 71, n. 20, 103 S.Ct. 2875, 2883, n. 20, 77 L.Ed.2d 469 (1983); [*Board of Trustees of State University of New York v.*] *Fox,* 492 U.S. [469] at 480, 109 S.Ct. [3028] at 3035 [106 L.Ed.2d 388 (1989)]. This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree [additional citations omitted].

*Id.* —— U.S. at ——, 113 S.Ct. at 1800. Just as in *Metromedia,* the Court went on to apply the *Central Hudson* test, reserved, as the Defendants claim, for those cases involving "as applied" challenges.

Although Defendants are correct that all lawyer advertising cases heretofore have reached the high court on appeal from impositions of sanctions, this Court does not find this legal coincidence dispositive. Each of the lawyer advertising cases that has reached the Supreme Court has been viewed by the Court as an "as applied" case, and in each case the Court applied the *Central Hudson* test. *Metromedia, Inc. v. San Diego,* though not a lawyer advertising case, involved the same legal considerations as the lawyer advertising cases and as the present case. In that case, as discussed above, no enforcement actions had been instituted against plaintiff outdoor advertisers, yet the Supreme Court applied the *Central Hudson* test.

Finally, the Court is persuaded by Plaintiffs' argument that, were they not able to bring an action for declaratory and injunctive

---

11. Depending upon how the challenge is construed, it dramatically shifts the burdens of proof of the parties. Defendants argue that "the Plaintiffs have the burden of showing that the challenged rules can never be effective in limiting misleading or deceptive lawyer advertising or potentially misleading or deceptive lawyer advertising." Defs.' Proposed Concl. of Law, ¶ 1. Plaintiffs argue that since the new advertising rules "directly and immediately impact them adversely," Defendants carry the burden of justifying the new regulations under the applicable First Amendment commercial speech legal standard.

relief before proceedings were instituted against a particular lawyer Plaintiff, they effectively would be deprived of a federal forum to hear their case, short of appeal from the Mississippi Supreme Court to the United States Supreme Court. If Defendants were correct that the only way to obtain "as applied" review is to await an enforcement action, then, since federalism principles would require the federal court to abstain during the pendency of such enforcement proceeding, *see, e.g., Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 436–37, 102 S.Ct. 2515, 2523–24, 73 L.Ed.2d 116 (1982); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), Plaintiffs' declaratory and injunctive claims under 42 U.S.C. § 1983 could not be pursued in federal court. Defendants' contention simply is not consistent with current law. Defendants have pointed the Court to no commercial speech case in which the *Central Hudson* test was not applied, and the Court holds that that test should apply in this case.[12]

### C. Application of Commercial Speech Analysis [13]

Because "disclosure of truthful, relevant information is more likely to make a positive contribution to decisionmaking than is concealment of such information," *Peel,* 496 U.S. at 108, 110 S.Ct. at 2292 (1990), only false, deceptive, or misleading commercial speech may be banned. *Ibanez,* —— U.S. ——, ——, 114 S.Ct. 2084, 2088 (citing *Zauderer,* 471 U.S. at 638, 105 S.Ct. at 2275). Stated another way, "[t]ruthful advertising related to lawful activities is entitled to the protections of the First Amendment.... Misleading advertising may be prohibited entirely." *In re R.M.J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982), *cited in Ibanez,* —— U.S. at ——, 114 S.Ct. at 2088.

Although commercial speech that is not false, deceptive, or misleading may not be banned, it may be restricted. *Central Hudson,* 447 U.S. at 566, 100 S.Ct. at 2351. However, the State may only restrict such commercial speech if it shows that the restriction directly and materially advances a substantial state interest in a manner that is no more extensive than necessary to serve that interest. *Id.* The State regulation will not be sustained if it "provides only ineffective or remote support for the government's purpose," *id.* at 564, 100 S.Ct. at 2350, and the regulation must advance a substantial state interest in a "direct and material way" and be in "reasonable proportion to the interests served." *Edenfield,* —— U.S. at ——, 113 S.Ct. at 1798.

The State Defendants in this case essentially placed all their eggs in the basket of their contention that the Court should analyze Plaintiffs' claim under a facial challenge model. Defendants all but conceded at closing arguments that they came to Court to prove no more than that there were conceivable circumstances under which the new Rules could be constitutional, and if they lost the battle on the burden of proof, then they were not prepared to fight the remainder of the war. The Court, having ruled that Plaintiffs' "as applied" model is the correct one in this case, is left largely to test the new Rules under the *Central Hudson* test, under evidence presented chiefly by the Plaintiffs.

### D. Summary of Testimony

#### 1. Plaintiffs' Case–in–Chief

Plaintiffs' first attorney witness was Richard Schwartz, a practicing attorney in Mississippi since 1981. He has advertised since 1989, using television advertisements, the Yellow Pages, and billboards. Though he was offered free sixty second radio spots, and

---

**12.** The United States Court of Appeals for the Eleventh Circuit came to the same conclusion when, quite recently, it was presented with the same question. *See Jacobs v. Florida Bar,* 50 F.3d 901 (11th Cir.1995) (holding, in challenge to Florida lawyer advertising rules, where no enforcement action had yet been taken, that district court should have placed burden of proof on the Florida Bar, using "as applied" model). *See*

*also Texans Against Censorship, Inc. v. State Bar of Texas,* 888 F.Supp. 1328, 1348 (E.D.Tex.1995) (holding that "Defendants carry the burden of vindicating the amended rules").

**13.** The Court draws its legal analytical structure for this section from the recent Supreme Court opinion in *Ibanez,* —— U.S. at —— – ——, 114 S.Ct. at 2088–89.

had advertisements prepared by an ad agency, he claims the required disclaimers made the ads ineffective, so he did not take advantage of the free air time. He stated that he uses the Sackett advertising agency, the president of which, Richard Sackett, testified later at trial. Schwartz objected to all of the new Rules, and would use each of the prohibited techniques if they were permitted.

Andy Stewart, a practicing attorney since 1990, testified that he has been advertising since May 1992, using the Yellow Pages, newspapers, a few television ads, and the "Consumer Tips" telephone dial ads. Stewart also objected to all the new Rules. He explained that the Consumer Tips ads run thirty seconds, and that the required disclaimers took eight to twelve seconds of that time. He stated that, prior to the use of disclaimers he was receiving 34 to 36 direct connects to his officer per month, and after the disclaimers were required, he received 28 to 29.

Mark Davis, who has been practicing law since 1984, has advertised since July 1989, using television, the Yellow Pages, and the newspaper. He also objected to all the rules, explaining that he has used most of the techniques banned by the new Rules, and would use them in the future if permitted. Davis uses the Guice ad agency, the second of the two advertising corporation Plaintiffs in this case.

The final of the four lawyer Plaintiffs is Lance Stevens, a practicing attorney since 1988. He has been advertising for three and a half years, using television ads produced by R.W. Lynch Company for nation-wide use, tailored to the local lawyer. He testified that he has used several of the techniques banned by the new Rules, and would use them again if permitted.

Reed Guice, president and chief operating officer of Guice & Guice, Inc. advertising agency in Biloxi, Mississippi, testified that he handles advertising for Davis and Goldberg. He stated that, from an advertising perspective, he saw no reason to approach lawyer advertising any differently from other service advertising. Guice went through each of the new Rules, and gave reasons why each detracted from either the effect of the advertisements that he could produce, or eliminated altogether proven, effective, advertising techniques.

Richard Sackett, chief executive officer and chairman of the board of Richard Sackett Executive Consultants of New Orleans, Louisiana, represents Richard Schwartz as his advertising agent. He claims his agency is one of the few large ad agencies handling mostly lawyer advertising. Sackett explained how he has changed Schwartz' advertisements to conform to the "spirit of the new Rules," but claimed that he did not know if it would be possible to conform to the letter of those Rules. He argued that any ad in strict conformance would be so cluttered with disclosures as to be ineffective. He took issue particularly with the ban on the use of testimonials, noting that testimonials are one of the basic methods of advertising, and a method easy to regulate. Either customers or bar regulators would need only to go to the person offering the testimonial to confirm its truth. Sackett also explained how each of the rules impinged on basic advertising methods, commonly used for advertisements in other service areas.

Charles Wolfram, a law professor from Cornell University who teaches in the field of professional responsibility, and a reporter for the American Law Institute committee writing *Restatement of Law Governing Lawyers*, gave a brief history of lawyer advertising. He noted that Abraham Lincoln advertised, and that advertising by lawyers was common until the end of the Nineteenth Century, when the notion developed within the profession that advertising made lawyers look like businessmen or tradesmen. He claimed that the profession first used peer pressure to regulate advertising, then restrictive rules until *Bates* in 1977.

Professor Wolfram also noted the bad image lawyers have always had, stating that at no time in recorded history had lawyers been viewed positively. He attributed this negative image to the kind of work that lawyers do, and to the human foibles of the lawyers themselves, rather than to lawyer advertising. He stated that there are no studies which indicate any correlation between law-

yer advertising and the poor public image of lawyers.

Professor Wolfram took issue with each of the new Rules at issue in this case. He stated that the rules, as a group, are more restrictive than those of all but a very few states, and far more restrictive than *Bates* requires. He testified that most states use the ABA Model Rules, which simply prohibit false, deceptive and misleading advertising. Professor Wolfram also pointed out some deficiencies in the individual rules. As to the prohibition against testimonials and dramatizations, he stated that he could not define what the Mississippi Bar meant by "testimonials," and in any case could find no problem with the use of either testimonials or dramatizations, so long as they were true. He questioned the prohibition against "self-laudatory" advertisements, noting that advertising is self-laudatory by its very nature, emphasizing as it does the qualities of the goods or services advertised. He also attacked the use of disclosures, claiming they tend to make viewers of the advertisement distrust the message, the lawyer generating that message, and the legal profession itself.

Keith Murray, a marketing professor from Bryant College in Smithfield, Rhode Island, explained basic marketing principles to the Court. He stated that the basic concept underlying service marketing is providing the kinds of information consumers want to hear. If the potential message is retarded by overly-restrictive rules, then consumers are not able to receive the information they need. Professor Murray also took issue with most of the rules from a marketing standpoint, and criticized some of the studies relied upon by the Defendants in formulating the new Rules.

Marcelene Johnson, a "practice development coordinator" from Chicago, and past president of the National Law Firm Marketing Association, testified about her marketing work for four large, Chicago area law firms. She has developed brochures and other advertising programs, but has done no television advertising. She is a public member of the ABA Commission on Advertising, which developed "Awards for Dignity," a system for rewarding advertisements deemed "digni-

fied." The Commission solicited nominees through flyers mailed to law firms and Johnson noted that in both 1992 and 1993, the Commission received over 150 submissions for the awards.

Johnson also helped prepare the "Crossroads" report on lawyer advertising. She described the series of hearings, surveys, and wide spectrum of views and interests that went into the preparation of the report, which was presented at the 1994 mid-year meeting of the ABA. She testified that the report concluded that there was no evidence that disclosures or disclaimers protected the image of the legal profession. In fact, the Commission found that restrictive disclosures and disclaimers were detrimental to the image of the profession. She also testified that the Commission found no evidence of problems resulting from the use of testimonials, self-laudatory statements, assurances of quality, dramatizations, more than one voice, background sounds, or slogans. The Commission concluded that the public was used to advertising in all its forms, and was not misled by common advertising techniques. It should be noted that the report has not been adopted by the House of Delegates.

Stuart Kellogg, General manager of Jackson television station WAPT channel 16 and member of the Mississippi Association of Broadcasters, testified that his station has carried lawyer advertising since the early 1960s. He noted that such ads have always been subject to Federal Trade Commission ("FTC") rules and regulations prohibiting false and misleading advertising. He also testified that testimonials are one of the most effective tools available to advertisers, and that banning them decreases the effectiveness of the advertisements, and thereby lessens the revenue of his station and of other stations who are members of the Mississippi Association of Broadcasters.

The Court also received into evidence the deposition of Dan Modisett, president elect of the Mississippi Association of Broadcasters, past president of Jackson Broadcasters, and past president of Greater Jackson Advertising. His testimony was similar to Kellogg's, as he noted the difficulties in creating effective thirty second television or radio adver-

tisements, given the restrictions of the new Rules. He stated that the interests of the media Plaintiffs in this case is two-fold, including loss of potential advertisements, and reduction in First Amendment rights to broadcast information to viewers. He also noted that all lawyer advertising, like other advertising, is subject to FTC regulations restricting false or misleading advertising, and that his station had never received any complaints from the FTC about lawyer advertising.

Finally, the Court heard from Evans Harrington, a retired English professor and member of Public Citizen, Inc. He stated that he had seen lawyer advertisements in Oxford, Mississippi, and that a reduction in lawyer advertising would personally affect him, as he found the ads he had seen to be instructive about the law and about lawyers themselves.

### 2. Defendants' Case–in–Chief

Defendants offered two witnesses. Professor Richard Mizerski, professor of marketing at Florida State University, testified that lawyer advertising is different from other forms of service advertising because (1) it is difficult for non-lawyers to evaluate the performance of lawyers; (2) legal "business" has more risk than other forms of personal service because money and emotions are often involved; (3) the search for lawyers by individuals tends to be a limited one, since people often stay with the first lawyer they visit; and (4) people are hesitant to terminate the services of lawyers. His testimony on the new Rules was consistent with Defendants' "facial challenge" defense theory. He stated that the practices barred by each of the new Rules could be misleading under some circumstances. He stated that the use of performance results and background voices "could be misleading," that the use of more than one voice "could conceivably be misleading," that the use of slogans "can be misleading," and that the use of celebrity voices was a "potentially misleading device." On cross examination he admitted that he could "conceive of ads that are not deceptive," containing each of the proscribed practices. He also stated that the FTC permits each of the banned advertising techniques.

The second and final defense witness was W. Scott Welch, III, President of the Mississippi Bar Association. He explained the involvement of the State Bar in lawyer advertising, including the appointment of a task force to study advertising, the holding of hearings statewide, the initial proposal of rules and subsequent modification in response to objections from advertising attorneys, and the final adoption of the new Rules by the Mississippi Supreme Court. He explained the specific concerns which the Bar had over the possible misleading or deceptive effect of each of the techniques proscribed by the Rules, and, like Professor Mizerski, noted that all the banned techniques could mislead the public. He also disagreed with testimony by several of Plaintiff's witnesses that advertisements do not affect the image of attorneys in the eyes of the public.

### III. HOLDING OF THE COURT

#### A. Defendants Did Not Carry Their Burden of Proof

■ The Plaintiffs challenged the new Rules individually and *in toto*, and the Defendants had the heavy burden of vindicating those rules under the *Central Hudson* standard. To withstand constitutional scrutiny, Defendants had to establish that each of the challenged new Rules directly advances a stated (and substantial) governmental interest, and is no broader than reasonably necessary to serve that interest. *See Edenfield,* — U.S. at ——, 113 S.Ct. at 1800. Stated differently, Defendants had a constitutionally imposed burden to develop a record demonstrating that each of the new Rules, and that the Rules in the aggregate, passed muster under the First Amendment. Defendants, however, ignored their burden in their case-in-chief, believing the onus was on Plaintiffs to prove the new Rules are unconstitutional.

In pre-trial briefs and in closing arguments, Defendants admitted that the Court was hearing "dual" cases, one tried by Plaintiffs under the "as applied" analysis, and one by Defendants under the "facial challenge" analysis. The Defendants gambled their entire case on the legal assumption that they only needed to prove that the new Rules could, conceivably, be applied in a constitutional manner. The Plaintiffs, on the other hand, placed evidence before the Court that the new Rules do not necessarily restrict

false, misleading or deceptive advertising, and that they do not directly advance the governmental interest claimed. That evidence went unrebutted.

Having ruled that the Plaintiffs proceeded under the proper legal standard, *see supra* pp. 569–571, the Court finds itself in the awkward position of ruling that, though certain of the challenged rules could conceivably meet the *Central Hudson* test for constitutionality, no such evidence was placed before the Court by the Defendants. The Defendants' insistence on trying their case under the facial model therefore compels the Court to hold that the challenged rules, as a total package, violate the Plaintiff's First Amendment rights to engage in commercial speech.

### B. Plaintiffs' Relief

#### 1. Declaratory Relief

■ Title 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, authorize entry of declaratory and injunctive relief necessary to bring state agencies or officials into compliance with the Constitution. A declaratory judgment is generally considered a less intrusive form of relief than an injunction, *Steffel v. Thompson,* 415 U.S. 452, 469, 94 S.Ct. 1209, 1220–21, 39 L.Ed.2d 505 (1974), and "[w]here ... constitutional violations are found, but state officials have shown their readiness to meet constitutional requirements, the Court should limit its initial response to a grant of declaratory relief." *Morrow v. Harwell,* 768 F.2d 619, 627 (5th Cir.1985); *Texans Against Censorship, Inc. v. State Bar of Texas,* 888 F.Supp. 1328, 1372 (E.D.Tex.1995). In *Texans Against Censorship,* having found that only two of several challenged rules governing lawyer advertising were unconstitutional, the Court wrote, "In the instant action, there is no indication that defendants will fail to recognize and protect plaintiffs' constitutional rights as determined by this court, or that defendants will ignore the adjudication rendered herein. Accordingly, injunctive relief is not necessary and only declaratory relief shall be granted." *Texans Against Censorship,* 888 F.Supp. at 1372.

Because "injunctive decrees directing state officials are appropriate only when constitu-tional violations have been shown *and* when the state officials are demonstrably unlikely to implement the required changes without its [sic] spur," *Morrow,* 768 F.2d at 627, this Court finds that a declaration that the new Rules are unenforceable should be sufficient to protect Plaintiffs' First Amendment rights. The Court draws support for its conclusion from its review of the Consent Order providing for a moratorium on enforcement of the new Rules with two exceptions, and on the compliance with that order by the Defendants in this case.

#### 2. Attorney's Fees and Costs

■ Title 42 U.S.C. § 1988 provides that, in § 1983 actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs." 42 U.S.C. § 1988(b). The Fifth Circuit has ordered an award of attorney's fees in a civil rights suit alleging violations of First Amendment rights. *Universal Amusement Co., Inc. v. Vance,* 587 F.2d 159, 172–73 (5th Cir.1978).

The Court finds that Plaintiffs, as prevailing parties, are entitled to recover attorney's fees reasonably incurred as a result of this lawsuit. Though the parties have not briefed this issue, and the Court welcomes such briefing by both parties upon submission of fees by Plaintiffs in accordance with Uniform Local Rule 15, the Court believes whatever fees as are awarded should be assessed against the State. *See, e.g., Scott v. Flowers,* 910 F.2d 201, 213 n. 25 (5th Cir.1990) (holding, in lawsuit against Texas Commission on Judicial Conduct, that award of attorney's fees must be paid by the state and not assessed against defendants in individual capacity, as the "injunctive relief sought and won ... can be obtained from the defendants only in their official capacity as commissioners."); *Echols v. Parker,* 909 F.2d 795, 800 (5th Cir.1990) (holding State liable for § 1988 attorney's fees where county prosecutor, district attorney, and justice court judge were sued in official capacities as enforcing agents of unconstitutional state statute).

### IV. CONCLUSION

Before the Court in this case were advertising rules which, whatever their design, had the effect of limiting the commercial speech

rights of the lawyer Plaintiffs who wished to advertise without the restrictions, of the media and advertising agency Plaintiffs who would have designed, produced and publicized the advertising, and of public citizens who had the right to hear the messages of the advertising lawyers. The Court recognizes that, in different forums, certain of the same rules that are challenged in the present case have been upheld as permissible, narrow restraints on speech, promulgated to protect substantial governmental interests. *See Texans Against Censorship, Inc. v. State Bar of Texas,* 888 F.Supp. 1328, 1372 (E.D.Tex. 1995). This Court, however, did not have the benefit of proof offered by Defendants in support of their burden of showing the constitutionality of the new Rules. The Court therefore must strike the new Rules as unconstitutional.

IT IS THEREFORE ADJUDGED AND DECLARED that the Amendments to Rule 7, Information About Legal Services, Mississippi Rules of Professional Conduct, as promulgated by the Supreme Court of Mississippi, (attached hereto as Appendix 1) and made enforceable by the Defendants in this action, are unconstitutional and unenforceable, as applied to Plaintiffs and others similarly situated, and as the Official Comments to those same Rules indicate the Rules are to be construed and applied.

IT IS FURTHER ORDERED that the Defendants pay all taxable costs and, as a part thereof, all reasonable and necessary attorney's fees and legal expenses as are allowed under 42 U.S.C. §§ 1983 and 1988, upon compliance by Plaintiffs with Uniform Local Rule 15.

SO ORDERED.

### APPENDIX 1

### AMENDMENTS TO RULE 7 OF MISSISSIPPI RULES OF PROFESSIONAL CONDUCT

### INFORMATION ABOUT LEGAL SERVICES

### RULE 7.1 COMMUNICATIONS CONCERNING A LAWYERS SERVICES

A lawyer shall not make or permit to be made a false, misleading, deceptive or unfair communication about the lawyer or the lawyer's services. A communication violates this rule if it:

(a) Contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading;

(b) Is likely to create an unjustified expectation about results the lawyer can achieve or states or implies that the lawyer can achieve results by means that violate the Mississippi Rules of Professional Conduct or other law;

(c) Compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated; or

(d) Contains a testimonial.

### COMMENT

This Rule governs all communications about a lawyer's services, including advertising permitted by Rule 7.2. Whenever means are used to make known a lawyer's services, statements about them shall be truthful. This precludes any material misrepresentation or misleading omission, such as where a lawyer states or implies certification or recognition as a specialist other than in accordance with Rule 7.6, where a lawyer implies that any court, tribunal or other public body or official can be improperly influenced or where a lawyer advertises a particular fee or a contingency fee without disclosing whether the client will also be liable for costs. Another example of a misleading omission is an advertisement for a law firm which states that all of the firm's lawyers are juris doctors but does not disclose that a juris doctorate is a law degree rather than a medical degree of some sort and that virtually any law firm in the United States can make the same claim. Although Rule 7.2 permits lawyers to list the jurisdictions and courts where they are admitted, it also would be misleading for a lawyer, who does not list other jurisdictions or courts to state that he or she is a member of The Mississippi Bar. Standing by itself,

such otherwise truthful statement falsely implies that the lawyer possesses a qualifications not common to virtually all lawyers practicing in Mississippi. The latter two examples of misleading omissions also are examples of unfair advertising.

The prohibition in paragraph (b) of statements that may create "unjustified expectations" precludes advertisements about results obtained on behalf of a client such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts, and advertisements containing client endorsements or testimonials. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.

The prohibition in paragraph (c) discussing comparisons that cannot be factually substantiated would preclude a lawyer from representing that he or she or his or her law firm is "the best," "one of the best," or "one of the most experienced" in a particular field of law.

The prohibition in paragraph (d) would preclude endorsements or testimonials because they are inherently misleading to a layman untrained in the law. Potential clients are likely to infer from the testimonial that the lawyer will reach similar results in future cases. Because the lawyer cannot directly make this assertion, the lawyer is not permitted to indirectly make such assertion through the use of testimonials.

## RULE 7.2 ADVERTISING

(a) Subject to all the requirements set forth in this Rule 7, including the filing requirements of Rule 7.5, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, billboards and other signs, radio or television but not motion pictures or video cassettes, and recorded messages the public may access by dialing a telephone number, or through written communications not involving solicitation as defined in Rule 7.3. These rules shall not apply to any advertisement broadcast or disseminated in another jurisdiction wherein the advertising lawyer is admitted if such advertisement complies with the rules governing lawyer advertising in that jurisdiction and the advertisement is not intended for broadcast or dissemination within the State of Mississippi.

(b) Advertisements on the electronic media, such as, television and radio, may contain the same factual information and illustrations as permitted in advertisements in the print media, but the information shall be articulated by a single voice, with no background sound other than instrumental music. The voice shall not be that of a celebrity who is recognizable to the public. Further, if the voice is not that of a full-time employee of/or an attorney affiliated with the firm whose services are advertised; there shall be prominently displayed at the beginning and end of said advertisement either orally or in writing, a notice to the public in the following form: "Actor Portrayal," and/or "Paid Endorsement."

(c) All advertisements and written communications pursuant to these Rules shall include the name of at least one lawyer or the lawyer referral service responsible for their content.

(d) Except as provided in this paragraph, all advertisements or written communications shall contain the following disclosure: "The Mississippi Supreme Court advises that a decision on legal services is important and should not be based solely on advertisements."

This disclosure must appear in electronic advertisements but need not appear in advertisements in the public print media that contain no illustrations and no information other than that listed in paragraph (n)(1)–(7) of this Rule.

(e) There shall be no dramatization in any advertisement in any medium.

(f) Illustrations used in advertisements shall present information which can be factually substantiated and is not merely self-laudatory.

(g) Every advertisement and written communication that indicates one or more areas of law in which the lawyer or law firm prac-

578

tices shall conform to the requirements of Rule 7.6.

(h) Every advertisement and written communication that contains information about the lawyer's fee, including those which indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee.

(i) A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a longer period; provided that for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored for no less than one year following publication.

(j) A lawyer shall not make statements which are merely self-laudatory or statements describing or characterizing the quality of the lawyer's services in advertisements and written communications.

(k) A lawyer shall not advertise services under a name that violates the provisions of Rule 7.7.

(*l*) All advertisements and written communications provided for under these Rules shall disclose the geographic location, by city or town, of the office in which the lawyer or lawyers who will actually perform the services advertised principally practice law. If the office location is outside a city or town, the county in which the office is located must be disclosed.

(m) No lawyer shall directly or indirectly pay all or a part of the cost of an advertisement by a lawyer not in the same firm unless the advertisement discloses the name and address of the nonadvertising lawyer, the relationship between the advertising lawyer and the nonadvertising lawyer, and whether the advertising lawyer may refer any case received through the advertisement to the nonadvertising lawyer.

(n) The following information in advertisements and written communications shall be presumed not to violate the provisions of Rule 7.1:

(1) Subject to the requirements of this Rule and Rule 7.7, the name of the lawyer or law firm, a listing of lawyers associated with the firm, office addresses and telephone numbers, office and telephone service hours, and a designation such as "attorney" or "law firm."

(2) Date of admission to The Mississippi Bar and any other Bars and a listing of federal courts and jurisdictions other than Mississippi where the lawyer is licensed to practice.

(3) Foreign language ability.

(4) Prepaid or group legal service plans in which the lawyer participates.

(5) Acceptance of credit cards.

(6) Fee for initial consultation and fee schedule, subject to the requirements of paragraphs (h) and (i) of this Rule.

(7) A listing of the name and geographic location of a lawyer or law firm as a sponsor of a public service announcement or charitable, civic or community program or event.

(*o*) Nothing in this Rule prohibits a lawyer or law firm from permitting the inclusion in law lists and law directories intended primarily for the use of the legal profession of such information as has traditionally been included in these publications.

(p) The lawyer shall retain a copy or recording for five (5) years after its last dissemination along with a record of when and where it was used. A copy or recording of an advertisement or written or recorded communication shall be submitted to the Office of General Counsel of the Mississippi Bar (hereinafter referred to as "OGCMB") in accordance with the provisions of Rule 7.5, upon General Counsel's request.

(q) A lawyer shall not give anything of value to a person for recommending the lawyer's services, except that a lawyer may pay the reasonable cost of advertising or a written or recorded communication permitted by these Rules and may pay the usual charges of a lawyer referral service or to other legal service organization.

## COMMENT

To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. The public's need to know about legal services can be fulfilled in part through advertising which provides the public with useful, factual information about legal rights and needs and the availability and terms of legal services from a particular lawyer or law firm. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. Nevertheless, certain types of advertising by lawyers create the risk of practices that are misleading or overreaching and can create unwarranted expectations by laymen untrained in the law. Such advertising can also adversely affect the public's confidence and trust in our judicial system.

This Rule is included in order to balance the public's need for useful information, the state's need to ensure a system by which justice will be administered fairly and properly, and the state's need to regulate and monitor the advertising practices of lawyers, with a lawyer's right to advertise the availability of the lawyer's services to the public. This Rule permits public dissemination of information concerning a lawyer's name or firm name, address, and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer's fees are determined, including prices for specific services and payment and credit arrangements; lawyer's foreign language ability; names of references and, with their consent, names of clients regularly represented; and other factual information that might invite the attention of those seeking legal assistance.

Television is now one of the most powerful media for conveying information to the public. A blanket prohibition against television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. The unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media. To prevent abuses, including potential interferences with the fair and proper administration of justice and the creation of incorrect public perceptions or assumptions about the manner in which our legal system operates, and to promote the public's confidence in the legal profession and this country's system of justice while not interfering with the free flow of useful information to prospective users of legal services, it is necessary also to restrict the techniques used in television and radio advertising. It is also necessary to prohibit motion picture and video cassette advertising because of the rapidity with which the information presented therein may become outdated and, therefore, become misleading.

Paragraphs (b) and (e) of this Rule are designed to ensure that the advertising is not misleading and does not create unreasonable or unrealistic expectations about the results the lawyer may be able to obtain in any particular case, and to encourage a focus on providing useful information to the public about legal rights and needs and the availability and terms of legal services. Thus, the Rule allows all lawyer advertisements wherein the lawyer personally appears to explain a legal right, the services the lawyer is available to perform, and the lawyer's background and experience.

The prohibition in paragraph (b) against any background sound other than instrumental music precludes, for example, the sound of sirens or car crashes and the use of jingles. Rule 7.1(d) forbids use of testimonials or endorsements from clients or anyone else. Rule 7.2(e) prohibits dramatizations in any advertisement, including those appearing on the electronic media. This is intended to preclude the use of scenes creating suspense, scenes containing exaggerations or situations calling for legal services, scenes creating consumer problems through characterization and dialogue ending with the lawyer solving

580

the problem, and the audio or video portrayal of an event or situation. While informational illustrations may attract attention to the advertisement and help potential clients to understand the advertisement, self-laudatory illustrations are inherently misleading and, thus, are prohibited. As an example, a drawing of a fist, to suggest the lawyer's ability to achieve results, would not be informational and would be barred.

Regardless of medium, a lawyer's advertisements should provide only useful, factual information presented in a nonsensational manner. Advertisements utilizing slogans or jingles, or oversized electrical and neon signs, or sound tracks, fail to meet these standards and diminish public confidence in the legal system.

The disclosure required by paragraph (d) of this Rule is designed to encourage the informed selection of a lawyer. As provided in Rule 7.3, a prospective client is entitled to know the experience and qualifications of any lawyer seeking to represent the prospective client. The required disclosure would be ineffective if it appeared in an advertisement so briefly or minutely as to be overlooked or ignored.

Neither this Rule or Rule 7.4 prohibits communications authorized by law, such as notice to members of a class in class action litigation.

This Rule applies to advertisements and written communications directed at prospective clients and concerning a lawyer's or law firm's availability to provide legal services. The Rule does not apply to communications between lawyers, including brochures used for recruitment purposes.

## PAYING OTHERS TO RECOMMEND A LAWYER

A lawyer is allowed to pay for advertising permitted by this Rule, but otherwise is not permitted to pay or provide other tangible benefits to another person for procuring professional work. However, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may partici-
pate in lawyer referral programs and pay the usual fees charged by such programs. Paragraph (g) does not prohibit paying regular compensation to an assistant, such as secretary or advertising consultant, to prepare communications permitted by this Rule.

## RULE 7.3   DIRECT CONTACT WITH PROSPECTIVE CLIENTS

(a) A Lawyer shall not by in-person or live telephone contact solicit professional employment from a prospective client with whom the lawyer has no family, close personal, or prior professional relationship when a significant motive of the lawyer's doing so is the lawyer's pecuniary gain.

(b) A lawyer shall not solicit professional employment from a prospective client by written or recorded communication or by in person or telephone contact even when not otherwise prohibited by paragraph A, if:

(1) Prospective client has made known to the lawyer the desire not to be solicited by the lawyer or

(2) The solicitation involves coercion, duress or harassment.

(c) A rewritten or recorded communication from a lawyer soliciting professional employment from a prospective client known to be in need of legal services in a particular matter, with whom the lawyer has no family, close personal, or prior professional relationship, shall include the words, "solicitation material" on the outside envelope or at the beginning and ending of any recorded communication.

(d) Notwithstanding the prohibitions of paragraph (a), a lawyer may participate with a prepaid or group legal service plan operated by an organization not owned or directed by the lawyer which uses in-person or telephone contact to solicit memberships or subscriptions for the plan from persons who are not known to need legal services in a particular matter covered by the plan.

## COMMENT

There is a potential for abuse inherent in direct in person or live telephone contact by a lawyer with a prospective client known to need legal services. These forms of contact

between a lawyer and a prospective client subject the layperson to the private importuning of the trained advocate in a direct interpersonal encounter. The prospective client, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult to fully evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately. The situation is fraught with the possibility of undue influence, intimidation, and over-reaching.

This potential for abuse inherent in direct in-person or live telephone solicitation of prospective clients justifies its prohibition, particularly since lawyer advertising and written and recorded communication permitted under Rule 7.2 offer alternative means of conveying necessary information to those who may be in need of legal services. Advertising and written and recorded communications which may be mailed or auto-dialed make it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client to direct in-person or telephone persuasion that may overwhelm the client's judgment.

The use of general advertising and written and recorded communications to transmit information from lawyer to prospective client, rather than direct in-person or live telephone contact, will help to assure that the information flows cleanly as well as freely. The contents of advertisements and communications permitted under Rule 7.2 are permanently recorded so that they cannot be disputed and may be shared with others who know the lawyer. This potential for informal review is itself likely to help guard against statements and claims that might constitute false and misleading communications, in violation of Rule 7.1. The contents of direct in-person or live telephone conversations between a lawyer to a prospective client can be disputed and are not subject to third party scrutiny. Consequently, they are much more likely to approach (and occasionally cross)

the dividing line between accurate representations and those that are false and misleading.

There is far less likelihood that a lawyer would engage in abusive practices against an individual with whom the lawyer has a prior personal or professional relationship or where the lawyer is motivated by consideration other than the lawyer's pecuniary gain. Consequently, the general prohibition in Rule 7.3(a) and the requirements of Rule 7.3(c) are not applicable in those situations.

But even permitted forms of solicitation can be abused. Thus, any solicitation which contains information which is false or misleading within the meaning of Rule 7.1, which involves coercion, duress or harassment within the meaning of Rule 7.3(b)(2), or which involves contact with a prospective client who has made known to the lawyer a desire not to be solicited by the lawyer within the meaning of Rule 7.3(b)(1) is prohibited. Moreover, if after sending a letter or other communication to a client as permitted by Rule 7.2, the lawyer receives no response, any further effort to communicate with the prospective client may violate the provisions of Rule 7.3(b).

This Rule is not intended to prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for their members, insureds, beneficiaries or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which the lawyer or lawyer's firm is willing to offer. This form of communication is not directed to a prospective client. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity which the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under rule 7.2.

The requirement in Rule 7.3(c) that certain communications be marked "Solicitation Ma-

terial" does not apply to communications sent in response to requests of potential clients or their spokespersons or sponsors. General announcements by lawyers, including changes in personnel or office location do not constitute communications soliciting professional employment from a client known to be in need of legal services within the meaning of this Rule.

Paragraph (d) of this Rule would permit an attorney to participate with an organization which uses personal contact to solicit members for its group or prepaid legal service plan, provided that the personal contact is not undertaken by any lawyer who would be a provider of legal services through the plan. The organization referred to in paragraph (d) must not be owned by or directed (whether as manager or otherwise) by any lawyer or law firm that participates in the plan. For example, paragraph (d) would not permit a lawyer to create an organization controlled directly or indirectly by the lawyer and use the organization for the in-person or telephone solicitation of legal employment of the lawyer through memberships in the plan or otherwise. The communication permitted by these organizations also must not be directed to a person known to need legal services in a particular matter, but is to be designed to inform potential plan members generally of another means of affordable legal services. Lawyers who participate in a legal service plan must reasonably assure that the plan sponsors are in compliance with Rules 7.1, 7.2 and 7.3(b). See Rule 8.4(a).

## CODE COMPARISON

DR 2–104(A) provided with certain exceptions that "[a] lawyer who has given in-person unsolicited advice to a layperson that he should obtain counsel or take legal action shall not accept employment resulting from that advice ..." The exceptions include DR 2–104(A)(1), which provided that a lawyer "may accept employment by a close friend, relative, former client (if the advice is germane to the former employment), or one whom the lawyer reasonably believes to be a client." DR 2–104(A)(2) through DR 2–104(A)(5) provided other exceptions relating,

respectively, to employment resulting from public educational programs, recommendation by a legal assistance organization, public speaking or writing and representing members of a class in class action litigation.

## RULE 7.4  LEGAL SERVICE INFORMATION

(a) Each lawyer or law firm that advertises his, her or its availability to provide legal services shall have available in written form for delivery to any potential client:

(1) A factual statement detailing the background, training and experience of each lawyer or law firm.

(2) If the lawyer or law firm claims special expertise in the representation of clients in special matters as allowed by Rule 7.6 or publicly limits the lawyer's or law firm's practice to special types of cases or clients, the written information shall set forth the factual details of the lawyer's experience, expertise, background, and training in such matters.

Further any advertisement or written communication shall advise any potential client of the availability of the above information by prominently displaying in all such advertisements and communications the following notice:  FREE BACKGROUND INFORMATION AVAILABLE UPON REQUEST."

(b) Whenever a potential client shall request information regarding a lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm:

(1) The lawyer or law firm shall promptly furnish (by mail if requested) the written information described in paragraph (a) of this Rule.

(2) The lawyer or law firm may furnish such additional factual information regarding the law firm deemed valuable to assist the client.

(c) A copy of all information furnished to clients by reason of this Rule shall be retained by the lawyer or law firm for a period of five years after the last regular use of the information.

(d) Any factual statement contained in any advertisement or written communication or

any information furnished to a prospective client under this Rule shall not:

(1) Be directly or inherently false or misleading;

(2) Be potentially false or misleading.

(3) Fail to disclose material information necessary to prevent the information supplied from being actually or potentially false or misleading:

(4) Be unsubstantiated in fact; or

(5) Be unfair or deceptive.

(e) Upon reasonable request by The Mississippi Bar, a lawyer shall promptly provide proof that any statement or claim made in any advertisement or written communication, as well as the information furnished to a prospective client as authorized or required by these Rules, is in compliance with paragraph (d) above.

(f) A statement and any information furnished to a prospective client, as authorized by paragraph (a) of this Rule, that a lawyer or law firm will represent a client in a particular type of matter, without appropriate qualification, shall be presumed to be misleading if the lawyer reasonably believes that a lawyer or law firm not associated with the originally retained lawyer or law firm will be associated or act as primary counsel in representing the client. In determining whether the statement is misleading in this respect, the history of prior conduct by the lawyer in similar matters may be considered.

## COMMENT

Consumers and potential clients have a right to receive factual, objective information from lawyers who are advertising their availability to handle legal matters. The Rule provides that potential clients may request such information and be given an opportunity to review that information without being required to come to a lawyer's office to obtain it. Selection of appropriate counsel is based upon a number of factors. However, selection can be enhanced by potential clients having factual information at their disposal for review and comparison.

## RULE 7.5   EVALUATION OF ADVERTISEMENTS

(a) A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or communication with these Rules in advance of disseminating the advertisement or communication by submitting the material and fee specified in paragraph (b) to the Office of General Counsel of the Mississippi Bar (OGCMB) at least forty-five days prior to such dissemination. If the OGCMB finds that the advertisement or communication complies with these rules, the lawyer's voluntary submission shall be deemed to satisfy the submission requirement set forth in paragraph (b) of this Rule.

(b) A submission with OGCMB as permitted by paragraph (a) shall consist of:

(1) A copy of the advertisement or communication in the form or forms in which it is to be disseminated (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);

(2) A transcript, if the advertisement or communication is on videotape or audiotape;

(3) A statement listing all media in which the advertisement or communication will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used;  and

(4) A fee of twenty-five dollars per submission of advertisement or communication made payable to The Mississippi Bar. This fee shall be used only for the purposes of evaluation and review of advertisements under these Rules and for the related purposes of enforcing these rules. A "submission of advertisement" is defined as each advertisement unless the same advertisement is to be used for print and electronic media utilizing the same script.

(c) The OGCMB shall evaluate all advertisements and communications submitted with it pursuant to this Rule for compliance with the applicable requirements set forth in this Rule. The OGCMB shall render its advisory opinion within forty-five days of re-

ceipt of a filing unless the OGCMB determines that there is reasonable doubt that the advertisement or communication is in compliance with the Rules and that further examination is warranted but such evaluation cannot be completed within the forty-five day time period, and so advise the filing lawyer within the forty-five day time period. In the latter event, the OGCMB shall complete its review as promptly as the circumstances reasonably allow. If the OGCMB does not send any correspondence or notice to the lawyer within forty-five days, the advertisement or communication will be deemed approved.

(d) If requested to do so by the OGCMB, the requesting lawyer shall submit information to substantiate representations made or implied in that lawyer's advertisement or communication.

(e) When the OGCMB determines that an advertisement or communication is not in compliance with the applicable Rules, the OGCMB shall advise the lawyer that dissemination or continued dissemination of the advertisement or communication may result in professional discipline.

(f) A finding by the OGCMB of either compliance or noncompliance shall not be binding in grievance proceedings, but may be offered as evidence.

(g) If a change of circumstances occurring subsequent to the OGCMB's evaluation of an advertisement or communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of a change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the OGCMB along with an explanation of the change in circumstances and a fee of twenty dollars per "submission of advertisement or communication."

### COMMENT

This Rule has a dual purpose: to enhance the court's and the bar's ability to monitor advertising practices for the protection of the public and to assist members of the Bar to conform their advertisements to the requirements of these Rules. This Rule gives law-yers the opportunity to submit their advertisements and other communications. In such event, the OGCMB will advise the filing lawyer in writing whether the advertisement appears to comply with the Rules. The OGCMB's opinion will be advisory only, but may be considered as evidence of a good faith effort to comply with these Rules. A lawyer who wishes to be able to rely on the OGCMB's opinion as demonstrating the lawyer's good faith effort to comply with these Rules has the responsibility of supplying the OGCMB with all information material for a determination of whether an advertisement or communication is false or misleading.

### RULE 7.7 FIRM NAMES AND LETTERHEADS

(a) A lawyer shall not use a firm name, letter head, or other professional designation that violates Rule 7.1.

(b) A lawyer shall not practice under a trade or fictitious name or a name that is misleading as to the identity of the lawyer or lawyers practicing under such name. A lawyer in private practice may use the term "legal clinic" or "legal services" in conjunction with the lawyer's own name if the lawyer's practice is devoted to providing routine legal services for fees that are lower than the prevailing rate in the legal community for those services.

(c) A law firm with offices in more than one jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.

(d) The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.

(e) Lawyers may state or imply that they practice in a partnership or to other organization only when that is the fact.

### COMMENT

A firm may be designated by the names of all or some of its members, or by the names

of deceased members where there has been a continuing succession in the firm's identity. The United States Supreme Court has held that legislation may prohibit the use of trade names in professional practice. It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.

Paragraph (a) precludes use in a law firm name of terms that imply that the firm is something other than a private law firm. Two examples of such terms are "academy" and "institute". Paragraph (b) precludes use of a trade or fictitious name suggesting that the firm is named for a person when in fact such a person does not exist or is not associated with the firm. Although not prohibited per se, the terms "legal clinic" and "legal services" would be misleading if used by a law firm that did not devote its practice to providing routine legal services at prices below those prevailing in the legal community for like services.

With regard to paragraph (c), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, "Smith and Jones", for that title suggests partnership in the practice of law.

## "EXHIBIT B"

### RULE 7.6 COMMUNICATION OF FIELDS OF PRACTICE

(a) A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. In public communication of practice in particular fields of law, a lawyer must include the following statement: "Listing of these previously mentioned area(s) of practice does not indicate any certification of expertise therein." Any public communication through a written medium shall contain such statement in type no smaller than the largest size type used to list the areas of practice. Any public communi-cation through an electronic medium shall contain such statement at a time and in a tone and manner so as clearly to convey the required information to the listener or viewer.

(b) A lawyer shall not state or imply that the lawyer is a specialist except as follows:

(1) a lawyer admitted to engage in patent practice before the United States Patent and Trademark Office may use the designation "patent attorney" or a substantially similar designation;

(2) a lawyer engaged in admiralty practice may use the designation "admiralty," "proctor in admiralty" or a substantially similar designation.

### COMMENT

This Rule permits a lawyer to indicate areas of practice in communication about the lawyer's services; for example, in a telephone directory or other advertising. If a lawyer practices only in certain fields, the lawyer is permitted so to indicate within the terms of this rule. However, stating that the lawyer is a "specialist" or that the lawyer's practice "is limited to" or "concentrated in" particular fields is not permitted. These terms have acquired a secondary meaning implying formal recognition as a specialist. Hence, use of these terms may be misleading unless the lawyer is certified or recognized in accordance with procedures in the state where the lawyer is licensed to practice.

Recognition of specialization in patent matters is a matter of long-established policy of the Patent and Trademark Office. Designation of admiralty practice has a long historical tradition associated with maritime commerce and the federal courts.